[No. S115009. Aug. 23, 2004.]

In re MICHAEL LEE JENNINGS on Habeas Corpus.

258

## Counsel

Rothschild, Wishek & Sands, Kelly Lynn Babineau and M. Bradley Wishek for Petitioner Michael Lee Jennings.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Carlos A. Martinez, Mathew Chan, Janet Neeley, David Andrew Eldridge, Stephen G. Herndon and Rachelle A. Newcomb, Deputy

Attorneys General; Robert A. Ryan, Jr., County Counsel, and James G. Wright, Deputy County Counsel, for Respondent State of California.

## OPINION

**WERDEGAR, J.**—Petitioner invited some guests to his home and served them alcoholic beverages. One of the guests, only 19 years old, after leaving the party caused an automobile accident resulting in serious injury. Charged with violating Business and Professions Code[1] section 25658, subdivision (c) (section 25658(c)), which prohibits the purchase of an alcoholic beverage for someone under 21 years old who, after drinking, proximately causes death or great bodily injury, petitioner sought to defend against the charge by claiming he did not know his guest was under the legal drinking age and in fact believed he was over 21 years old. The trial court and two levels of appellate courts ruled that because knowledge of age is not an element of the crime, a mistake of fact as to age is not a defense. We agree the People need not prove knowledge of age to establish a violation of section 25658(c), but we conclude petitioner was entitled to defend against the charge by claiming a mistake of fact as to age. Accordingly, we reverse the judgment.

### FACTS[2]

On May 30, 2000, petitioner Michael Lee Jennings, a supervisor for Armor Steel Company in Rio Linda, invited coworkers Charles Turpin, Curtis Fosnaugh, Daniel Smith and Donald Szalay to his home to view a videotape demonstrating some new machinery the company was to obtain. Szalay stopped at a convenience store and bought a 12-pack of beer to bring to the gathering. At petitioner's direction, his wife went to a store and purchased another 12-pack of beer. The five men sat in the garage and drank beer.

Some time later, the men went into the house where they watched the videotape and drank more beer. Around 6:00 p.m., the party broke up. Fosnaugh left driving a white Ford pickup truck. Turpin then left driving his Volkswagen Beetle, accompanied by Smith. Fosnaugh stopped at a stop sign at the intersection of E Street and 20th Street in Rio Linda. Turpin, intending to overtake and pass Fosnaugh on the left without stopping at the intersection, drove on the wrong side of the road. By his own estimate, Turpin was driving around 55 miles per hour. Unaware of Turpin's intention to pass on the left, Fosnaugh attempted to make a left turn, resulting in a major collision and serious injuries to Turpin, Smith and Fosnaugh.

---

[1] All further statutory references are to the Business and Professions Code unless otherwise stated.

[2] Petitioner waived his right to a jury trial and submitted his case on the police report. The facts are drawn largely from that report.

Turpin, who had to be pried from his car with the Jaws of Life, told police responding to the scene that he drank about seven beers between 4:00 and 6:00 p.m. The results of a preliminary alcohol screening test indicated Turpin had a blood-alcohol concentration of .124 percent. Later at the hospital, a blood test determined Turpin's blood-alcohol concentration to be .16 percent. Turpin was 19 years old. Fosnaugh was 20 years old.

Petitioner was charged with violating section 25658(c), purchasing alcohol for someone under 21 years old who consumes it and "thereby proximately causes great bodily injury or death to himself, herself, or any other person . . . ." The People moved in limine to exclude evidence that petitioner was unaware Turpin was not yet 21 years of age. Petitioner opposed the motion and made an offer of proof that he was ignorant of Turpin's age. Specifically, petitioner alleged that a few weeks before the accident, he was with several coworkers drinking beer in front of a local market after work when a police officer arrived and confronted Turpin, who was holding a beer. Petitioner alleged he heard Turpin tell the officer he was 22 years old. In addition, petitioner alleged that, although he was Turpin's supervisor, he did not process Turpin's employment application (which did not, in any event, have a space for the applicant's age), and Turpin's employment file did not have a photocopy of his driver's license.

The trial court granted the People's motion, ruling that section 25658(c) was a strict liability offense and ignorance of Turpin's age was not a defense. Petitioner then submitted the case on the police report subject to a reservation of the right to challenge on appeal the correctness of the trial court's evidentiary ruling. The trial court found petitioner guilty as charged. The court sentenced him to six months in jail, with sentence suspended and probation granted on conditions including service of 60 days in jail.

DISCUSSION

A. *Background*

The regulation of alcoholic beverages in this country has taken a long and twisting path (see U.S. Const., 18th Amend. [prohibiting "the manufacture, sale, or transportation of intoxicating liquors" within the U.S.]; *id.*, 21st Amend. [repealing the 18th Amend.]), but regulation has now devolved to the states, who "enjoy broad power under § 2 of the Twenty-first Amendment to regulate the importation and use of intoxicating liquor within their borders." (*Capital Cities Cable, Inc. v. Crisp* (1984) 467 U.S. 691, 712 [81 L.Ed.2d 580, 104 S.Ct. 2694].) One active area of California's regulation of alcoholic beverages concerns underage drinkers. No citation to authority is necessary to establish that automobile accidents by underage drinkers lead to the injuries

and deaths of thousands of people in this country every year. Nevertheless, the statistics are sobering. "In 2002, 24% of drivers ages 15 to 20 who died in motor vehicle crashes had been drinking alcohol." (http://www.cdc.gov/ncipc/factsheets/drving.htm [as of Aug. 23, 2004].) "Analysis of data from 1991–1997 found that, consistently, more than one in three teens reported they had ridden with a driver who had been drinking alcohol in the past month. One in six reported having driven after drinking alcohol within the same one-month time period." (http://www.cdc.gov/ncipc/factsheets/teenmvh.htm [as of Aug. 23, 2004].) "In 2002, 25 percent of 16–20-year-old passenger vehicle drivers fatally injured in crashes had high blood alcohol concentrations (0.08 percent or more). Teenage drivers with BACs in the 0.05–0.08 percent range are far more likely than sober teenage drivers to be killed in single-vehicle crashes—17 times more likely for males, 7 times more likely for females. At BACs of 0.08-0.10, risks are even higher, 52 times for males, 15 times for females." (http://www.hwysafety.org/safety%5Ffacts%20qanda/underage.htm [as of Aug. 23, 2004].)

Given these facts, that our laws shield young people from the dangers of excess alcohol consumption is no surprise. Our state Constitution establishes the legal drinking age at 21, three years past the age of legal majority (see, e.g., Cal. Const., art. II, § 2 [must be at least 18 years old to vote]; Fam. Code, § 6500 [a "minor" is one under 18 years old]; Prob. Code, § 3901, subd. (a) ["adult" defined as one "who has attained the age of 18 years"]), both for purchases and personal consumption at on-sale premises. (Cal. Const., art. XX, § 22.) The "likely purpose" of this constitutional provision "is to protect such persons from exposure to the 'harmful influences' associated with the consumption of such beverages." (*Provigo Corp. v. Alcoholic Beverage Control Appeals Bd.* (1994) 7 Cal.4th 561, 567 [28 Cal.Rptr.2d 638, 869 P.2d 1163].)

The Legislature has implemented this constitutional mandate in a number of ways. For example, section 25658, subdivision (a) (§ 25658(a)) makes it a misdemeanor to sell or furnish an alcoholic beverage to any person under the age of 21 years. Section 25658, subdivision (b) makes it a misdemeanor for an underage person to buy alcohol or consume an alcoholic beverage in any on-sale premises. Under a new law enacted in 2003, a parent who permits his or her minor child to drink an intoxicating beverage can under some circumstances be guilty of a misdemeanor. (§ 25658.2.)[3]

---

[3] Section 25658.2 provides: "(a) A parent or legal guardian who knowingly permits his or her child, or a person in the company of the child, or both, who are under the age of 18 years, to consume an alcoholic beverage or use a controlled substance at the home of the parent or legal guardian is guilty of [a] misdemeanor if all of the following occur:

Of course, an underage person creates a potentially deadly situation when he or she drives after imbibing. Addressing that situation, the Legislature has provided penalties for persons under the age of 21 who drive with a blood-alcohol concentration much less than that prohibited for persons over 21 years old. For example, the Legislature has enacted what has been termed a "zero tolerance" law (*Coniglio v. Department of Motor Vehicles* (1995) 39 Cal.App.4th 666, 673 [46 Cal.Rptr.2d 123]), making it unlawful for a person under 21 years old to operate a motor vehicle with as little as a 0.01 percent blood-alcohol concentration as measured by a preliminary alcohol screening device (Veh. Code, §§ 23136, 13390). Violation of this law carries civil penalties. An underage person who drives with a 0.05 percent blood-alcohol concentration is subject to a one-year loss of driving privileges as well as other administrative liabilities (*id.*, §§ 23140, 13202.5, subds. (a) & (d)(4), 13352.6; see also *id.*, § 23224 [possession of alcoholic beverages by an underage driver].) A driver 21 years old or older, by contrast, is not subject to criminal penalties until his or her blood-alcohol concentration rises to 0.08 percent or more. (*Id.*, § 23152, subd. (b).) Irrespective of his or her blood-alcohol concentration, of course, a person of any age is subject to criminal penalties if he or she drives while "under the influence of any alcoholic beverage." (*Id.*, § 23152, subd. (a).)

■ Specifically addressing the circumstance where an individual purchases alcohol for an underage person, section 25658(c) makes such purchase punishable where the underage person, as a consequence of consuming the alcohol, causes great bodily injury or death to anyone. Though just a misdemeanor, the offense is punishable by imprisonment in a county jail for a minimum of six months, by a fine of up to $1,000, or both. (§ 25658, subd. (e)(3).)

Section 25658(c) does not explicitly require that the offender have knowledge, intent, or some other mental state when purchasing the alcoholic beverage, and this lacuna forms the basis of the present dispute. The question is whether we should construe the statute to require some mental state as a necessary element of the crime. Preliminary to that question is a determination of what acts the section prohibits, for if petitioner's actions did not violate section 25658(c), his knowledge or mental state would be irrelevant.

---

"(1) As the result of the consumption of an alcoholic beverage or use of a controlled substance at the home of the parent or legal guardian, the child or other underage person has a blood-alcohol concentration of 0.05 percent or greater, as measured by a chemical test, or is under the influence of a controlled substance.

"(2) The parent knowingly permits that child or other underage person, after leaving the parent's or legal guardian's home, to drive a vehicle.

"(3) That child or underage person is found to have caused a traffic collision while driving the vehicle."

### B. *What Acts Does Section 25658(c) Prohibit?*

To determine the meaning of section 25658(c), we look to the intent of the Legislature in enacting the law, "being careful to give the statute's words their plain, commonsense meaning. [Citation.] If the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary." (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 919 [129 Cal.Rptr.2d 811, 62 P.3d 54].) Additionally, we must interpret section 25658(c) in context with the entire statute and the statutory scheme. (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743 [110 Cal.Rptr.2d 828, 28 P.3d 876].)

Section 25658(c) provides in full: "Any person who violates subdivision (a) by purchasing an alcoholic beverage for a person under the age of 21 years and the person under the age of 21 years thereafter consumes the alcohol and thereby proximately causes great bodily injury or death to himself, herself, or any other person, is guilty of a misdemeanor." Subdivision (a), in turn, states that "every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any person under the age of 21 years is guilty of a misdemeanor." Consequently, subdivision (c) prohibits the selling, furnishing or giving away of alcohol to an underage person, but only in the circumstance therein specified, namely, by "purchasing" such beverage "for" an underage person. Only persons who (1) furnish or give away alcoholic beverages, (2) by purchasing such beverages, (3) for an underage person can be guilty of violating section 25658(c).

Section 25658(c) plainly embraces the situation in which an underage person, loitering in front of a liquor store, asks an approaching adult to buy alcoholic beverages for him or her, commonly known as the "shoulder tap" situation (see *Yu v. Alcoholic Bev. etc. Appeals Bd.* (1992) 3 Cal.App.4th 286, 293 [4 Cal.Rptr.2d 280] [describing how "minors tap adults on the shoulder" as they enter a market and "get them to buy liquor for the minors"]) or, more colloquially, "shoulder tapping" (http://www.urbandictionary.com/-define.php?term=shoulder+tapping [as of Aug. 23, 2004]). In such situations, that the buyer "*purchas[ed]* an alcoholic beverage *for* a person under the age of 21 years" (italics added) in violation of section 25658(c) is not open to doubt. Used in this sense, the statutory phrase "purchas[e] . . . for" means the offender must stand in the shoes of the underage person and act as a buyer by proxy; the word "for" in this case means "in place of." (Webster's 3d New Internat. Dict. (2002) p. 886, col. 2 [giving example of definition 5a: "go to the store [for] me"].)

That the Legislature's attention was focused on the phenomenon of shoulder tapping when it enacted section 25658(c) is clear from the legislative history. (*In re J. W.* (2002) 29 Cal.4th 200, 211 [126 Cal.Rptr.2d 897, 57 P.3d 363] ["To determine the purpose of legislation, a court may consult contemporary legislative committee analyses of that legislation, which are subject to judicial notice"].) Subdivision (c) of section 25658 began as Assembly Bill No. 2029 (1997–1998 Reg. Sess.), introduced by Assemblyman Keeley on February 18, 1998. When the bill was introduced in the Assembly Committee on Public Safety on April 14, 1998, the author's comments were incorporated into the bill's analysis: " 'Last July, a tragedy occurred in the district I represent which brought to my attention the high level of access that minors have to alcohol. Three minors died in a drunk driving accident, in which the driver, a minor, had consumed alcohol that was purchased for him by an adult. The adult served 30 days in a county jail and the driver of the car is serving an eight-year sentence in state prison. [¶] According to the United Way, nationwide, 62% of 12th graders have been drunk. In Santa Cruz County alone, 95% of 11th graders say that they could easily obtain alcohol if they wanted to. *One of the top ways in which minors gain access to alcohol is by 'shoulder tapping,' or asking an adult, often in front of a liquor store, to purchase alcohol for a minor. [¶] Adults who do this must be held responsible for their actions.* The intention of [Assembly Bill No.] 2029 is to provide an effective deterrent to adults who are irresponsible enough to buy alcohol for minors.' " (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2029 (1997–1998 Reg. Sess.) Apr. 14, 1998, italics added.) The Superintendent of the San Lorenzo Unified School District provided a similar argument in support of the bill. (*Ibid.*) Assemblyman Keeley's statement was later included in the state Senate's bill analysis. (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1204 (1997–1998 Reg. Sess.) June 23, 1998.)[4] No contrary statements of intent appear in any of the legislative history of these bills.

Whether the statute is limited to the shoulder tap situation or embraces other circumstances is a more difficult question. The archetypal shoulder tap scenario involves strangers, a request from an underage person, a business establishment that sells alcohol, and no intent on the buyer's part to share in drinking the purchased beverage. But does the statute apply when, for example, a parent, without solicitation, goes to a grocery store and buys beer for her underage son? In that hypothetical situation, as apparently in the instant case, no actual request to purchase the alcohol is made. Or does the statute apply when an adult attending a baseball game announces he is going to the concession stand and at the request of an underage friend brings him back a beer? Although that situation involves a request to purchase, the

---

[4] By this time, Assembly Bill No. 2029 had been incorporated into Assembly Bill No. 1204 for technical procedural reasons.

participants (as in this case) are not strangers. Further, does section 25658(c) apply if an adult purchases beer for himself but days later gives one to an underage guest? In that case, no intent to purchase for a third party exists at the time of sale, but the purchaser later provides the alcohol to an underage person. Finally, does the statute apply to the social party host who purchases alcoholic beverages generally for a party but not for any particular guest? In that situation, the host certainly purchased the beverages for the party,[5] but did he do so for a particular underage guest?

 In resolving the meaning of section 25658(c), we must be careful not to add requirements to those already supplied by the Legislature. (*Robert F. Kennedy Medical Center v. Belshé* (1996) 13 Cal.4th 748, 756 [55 Cal.Rptr.2d 107, 919 P.2d 721].) "Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) Here, although the Legislature was focused on the shoulder tap scenario, the language of section 25658(c) is not so limited. Section 25658(c) imposes no requirement that the underage person make a request to a proxy to buy alcohol, nor that the two principal actors be unknown to each other. Nor is there a statutory requirement that the underage person wait outside the place of sale or that the buyer have no intention to share the beverage. The statute requires only that the offender "purchas[e]" an alcoholic beverage "for" an underage person. That event can occur in a variety of settings. In short, section 25658(c) embraces more than merely shoulder tapping.

 Nevertheless, some limits are apparent when we consider section 25658(c) together with section 25658(a). (See *Renee J. v. Superior Court, supra,* 26 Cal.4th at p. 743.) As indicated, subdivision (a) of section 25658 sweeps more broadly than does subdivision (c), criminalizing the selling, furnishing, or giving of alcoholic beverages "*to* any person under the age of 21" (italics added), whereas subdivision (c) criminalizes the violation of subdivision (a) "by purchasing an alcoholic beverage *for* a person under the age of 21 years" (italics added). Viewing together these two subdivisions of the same statute, it is apparent the acts prohibited by subdivision (c) involve a subset of the universe of possible situations in which one might violate subdivision (a). The Legislature's use of the phrase "purchas[e] . . . for" delineates a smaller group of prohibited actions by identifying specific goal-directed behavior by the purchaser of alcoholic beverages, involving an identified and particular

---

[5] In fact, party guest Szalay purchased some of the beer, and petitioner's wife purchased the remainder, at petitioner's request. Presumably petitioner's culpability as a purchaser of intoxicating beverages flows from his status as an aider and abettor, an issue we need not decide here inasmuch as he essentially entered a "slow plea" of guilty by submitting the case on the police report.

underage person. In other words, to violate section 25658(c), one must not only *furnish* alcohol *to* an underage person, one must *purchase* the alcohol *for* that person.

■ Although section 25658(a) clearly embraces the social party host (because such persons furnish or give away alcoholic beverages to their guests), the generalized actions of the typical social party host, providing libations for his or her guests, do not run afoul of the more specific section 25658(c) because, as a general matter, such hosts cannot be said to have purchased alcohol "for" any particular guest.[6] Although a social host could be said to have purchased alcoholic beverages for every one of his or her guests, such an interpretation would be unreasonable, as in that case, "purchase for" would mean the same as "furnish to," blurring the distinction between the two subdivisions. As used in section 25658(c), the term "for" is "used as a function word to indicate the person . . . that something is to be delivered to." (Webster's 3d New Internat. Dict., *supra*, p. 886, col. 2 [giving example of definition 3d: "any letters [for] me"].)

■ In light of the plain meaning of the statutory language, we conclude section 25658(c) applies to any situation in which an individual purchases alcoholic beverages for an underage person. This includes, but is not limited to, the buyer-by-proxy and shoulder tap scenarios. We now consider whether section 25658(c), so interpreted, requires proof of some mental state such as knowledge of age.

### C. *Knowledge of Age*

#### 1. *Section 25658(a)*

Because section 25658(c) describes a subset of actions prohibited by section 25658(a),[7] if subdivision (a) requires the People to prove a violator knew the age of the person to whom alcohol was furnished, such proof would also be required to show a violation of subdivision (c). Conversely, if subdivision (a) is a strict liability offense, lacking any knowledge requirement, that fact would weigh heavily in our determination whether subdivision (c) requires proof of knowledge. We thus consider whether section 25658(a) requires such proof. We conclude it does not.

---

[6] We thus disagree with the People's position, stated at oral argument, that to ensure one does not violate section 25658(c), a social host can simply choose not to serve alcoholic beverages.

[7] Of course, subdivision (c) has the additional requirement that the underage person actually consume the alcohol "and thereby proximately causes great bodily injury or death to himself, herself, or any other person . . . ." Strictly speaking, then, subdivision (c) is not a lesser included offense of subdivision (a).

For criminal liability to attach to an action, the standard rule is that "there must exist a union, or joint operation of act and intent, or criminal negligence." (Pen. Code, § 20.) "[T]he requirement that, for a criminal conviction, the prosecution prove some form of guilty intent, knowledge, or criminal negligence is of such long standing and so fundamental to our criminal law that penal statutes will often be construed to contain such an element despite their failure expressly to state it. 'Generally, " '[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.' . . ." [Citation.] In other words, there must be a union of act and wrongful intent, or criminal negligence. [Citations.] "So basic is this requirement that it is an invariable element of every crime unless excluded expressly or by necessary implication." [Citation.]' [Citation.]" (*In re Jorge M.* (2000) 23 Cal.4th 866, 872 [98 Cal.Rptr.2d 466, 4 P.3d 297] (*Jorge M.*); see 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, § 1, pp. 198–199.)

The prevailing trend in the law is against imposing criminal liability without proof of some mental state where the statute does not evidence the Legislature's intent to impose strict liability. (*People v. Simon* (1995) 9 Cal.4th 493, 521 [37 Cal.Rptr.2d 278, 886 P.2d 1271]; *Liparota v. United States* (1985) 471 U.S. 419, 426 [85 L.Ed.2d 434, 105 S.Ct. 2084] [extension of strict liability crimes disfavored]; see 1 Witkin & Epstein, Cal. Criminal Law, *supra*, Elements, § 18, p. 223 [examples given of strict liability crimes are not "indicative of a trend. Indeed, the opposite appears to be true"].)

"Equally well recognized, however, is that for certain types of penal laws, often referred to as public welfare offenses, the Legislature does not intend that any proof of scienter or wrongful intent be necessary for conviction. 'Such offenses generally are based upon the violation of statutes which are purely regulatory in nature and involve widespread injury to the public. [Citation.] "Under many statutes enacted for the protection of the public health and safety, e.g., traffic and food and drug regulations, criminal sanctions are relied upon even if there is no wrongful intent. These offenses usually involve light penalties and no moral obloquy or damage to reputation. Although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction. The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the interest of enforcement." ' " (*Jorge M., supra*, 23 Cal.4th at p. 872.)[8]

---

[8] Examples of public welfare offenses for which criminal liability attaches in the absence of any mens rea include improperly labeling and storing hazardous waste (Health & Saf. Code, § 25190; see *People v. Matthews* (1992) 7 Cal.App.4th 1052, 1057–1058 [9 Cal.Rptr.2d 348]), sale of mislabeled motor oil (Bus. & Prof. Code, § 13480; *People v. Travers* (1975) 52 Cal.App.3d 111 [124 Cal.Rptr. 728]), sale of food contaminated with fecal matter (*People v. Schwartz* (1937) 28 Cal.App.2dSupp. 775 [70 P.2d 1017]), sale of shortweighted food (*In re*

Alcohol-related offenses, such as driving with a prohibited blood-alcohol concentration (*Ostrow v. Municipal Court* (1983) 149 Cal.App.3d 668 [197 Cal.Rptr. 40]) and employment of a minor at an establishment selling alcoholic beverages (*Kirby v. Alcoholic Bev. etc. App. Bd.* (1968) 267 Cal.App.2d 895 [73 Cal.Rptr. 352]), have been found to constitute such public welfare offenses.

We found in *Jorge M., supra,* 23 Cal.4th 866, a "useful" analytical framework "where the legislative intent is not readily discerned from the text [of the law] itself . . . ." (*Id.* at p. 873.) We there explained that "courts have commonly taken into account . . . : (1) the legislative history and context; (2) any general provision on mens rea or strict liability crimes; (3) the severity of the punishment provided for the crime ('Other things being equal, the greater the possible punishment, the more likely some fault is required'); (4) the seriousness of harm to the public that may be expected to follow from the forbidden conduct; (5) the defendant's opportunity to ascertain the true facts ('The harder to find out the truth, the more likely the legislature meant to require fault in not knowing'); (6) the difficulty prosecutors would have in proving a mental state for the crime ('The greater the difficulty, the more likely it is that the legislature intended to relieve the prosecution of that burden so that the law could be effectively enforced'); [and] (7) the number of prosecutions to be expected under the statute ('The fewer the expected prosecutions, the more likely the legislature meant to require the prosecuting officials to go into the issue of fault')." (*Ibid.*)

■ We need not address all of the *Jorge M.* factors because section 25658(a) falls easily into the category of crimes courts historically have determined to be public welfare offenses for which proof of knowledge or criminal intent is unnecessary. First, the statute does not expressly require a mental state. More to the point, the statute is closely akin to those public welfare offenses that " 'are purely regulatory in nature and involve wide-spread injury to the public.' " (*Jorge M., supra,* 23 Cal.4th at p. 872.) Like those offenses, section 25658(a) is more regulatory than penal, addressed more to the public welfare than to the individual punishment of the transgressor. As one court has opined when addressing the purpose of section 25658: "[I]t may be assumed that the provisions prohibiting certain transactions with minors are designed to protect them from harmful influences." (*Lacabanne Properties, Inc. v. Dept. Alcoholic Bev. Control* (1968) 261 Cal.App.2d 181, 188 [67 Cal.Rptr. 734]; accord, *Provigo Corp. v. Alcoholic Beverage Control Appeals Bd., supra,* 7 Cal.4th at p. 567.)

*Marley* (1946) 29 Cal.2d 525 [175 P.2d 832]), and use of an unlicensed poison (*Aantex Pest Control Co. v. Structural Pest Control Bd.* (1980) 108 Cal.App.3d 696 [166 Cal.Rptr. 763]).

■ The statute's goal of avoiding a broader societal harm rather than imposing individual punishment is illustrated by the light penalties prescribed for its violation. Violation of section 25658(a) imposes a $250 fine, between 24 and 32 hours of community service, or a combination thereof. (§ 25658, subd. (e)(1).) For a first offense involving a minor and not simply an underage person, the penalty is a $1,000 fine and at least 24 hours of community service. (*Id.*, subd. (e)(2).) No violation of section 25658(a) results in incarceration of any length. Thus, as for other public welfare offenses, section 25658(a) " ' "involve[s] light penalties and no moral obloquy or damage to reputation. Although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction." ' " (*Jorge M., supra,* 23 Cal.4th at p. 872.) The light penalties for violating section 25658(a) strongly suggest the Legislature has dispensed with any requirement that the People prove knowledge or some other criminal intent.

Petitioner argues section 25658(a) must be interpreted to require knowledge of age despite any explicit statutory requirement, citing *Brockett v. Kitchen Boyd Motor Co.* (1972) 24 Cal.App.3d 87 [100 Cal.Rptr. 752]. *Brockett* concerned civil, not criminal, liability. In passing, it stated about section 25658(a): "If one *wilfully* disobeys the law and *knowingly* furnishes liquor to a minor *with knowledge* that the minor is going to drive a vehicle on the public highways, as alleged in this case, he must face the consequences." (*Brockett, supra,* at p. 93, italics added.) Not addressed in *Brockett* is whether one must face the same consequences absent such intent or knowledge. An opinion, of course, is not authority for propositions not considered. (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 581 [110 Cal.Rptr.2d 809, 28 P.3d 860].) In any event, *Brockett* relied extensively on *Vesely v. Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], which subsequently was statutorily overruled. (See Bus. & Prof. Code, § 25602, subd. (c); Civ. Code, § 1714, subd. (b).)

■ More on point is *Provigo Corp. v. Alcoholic Beverage Control Appeals Bd., supra,* 7 Cal.4th at page 569, where this court held as to seller-licensees that "the laws against sales to minors [citing Cal. Const., art. XX, § 22; Bus. & Prof. Code, § 25658(a)] can be violated *despite* the seller's (or its agents') lack of knowledge of the purchaser's minority." *Provigo,* then, at least suggests section 25658(a) also does not require proof of knowledge or intent by other persons who provide alcohol to underage persons. We conclude that to obtain a conviction under section 25658(a), the People need not prove the offender knew the person to whom he or she furnished, sold or gave an alcoholic beverage was in fact not yet 21 years old.

.

### 2. Section 25658(c)

■ Whether subdivision (c) of section 25658 dispenses with a proof of knowledge requirement is a more complex question. Unlike with subdivision (a), three factors mentioned in *Jorge M., supra*, 23 Cal.4th at page 873—the legislative history and context of the statute, the severity of the punishment, and the seriousness of the harm to the public—have substantial application in the analysis for subdivision (c). Nevertheless, we similarly conclude the People need not prove knowledge or intent to establish a violation of subdivision (c).

First and foremost, the legislative history of section 25658(c) strongly suggests the Legislature intended to impose guilt without a showing the offender knew the age of the person for whom alcohol was purchased. As discussed, *ante*, section 25658(c) was an amendment to the existing statute, responding to an incident in Santa Cruz County in which someone over 21 years old purchased alcoholic beverages for an underage person who thereafter became intoxicated and crashed his car, killing three minors. As originally proposed, Assembly Bill No. 2029 would have proscribed "furnish[ing]" an alcoholic beverage to a "minor" if the minor then caused death or great bodily injury. This original version of the bill made the new crime punishable as either a felony or a misdemeanor, commonly called a wobbler. (Assem. Bill No. 2029 (1997–1998 Reg. Sess.) as introduced Feb. 18, 1998.) The bill was amended in the Assembly to substitute the phrase "purchasing . . . for" in the place of "furnishing . . . to." The amendment also deleted reference to a "minor" and replaced it with "a person under the age of 21 years." That the crime could be a felony punishable in state prison remained unchanged. (Assem. Amend. to Assem. Bill No. 2029 (1997–1998 Reg. Sess.) Mar. 26, 1998.)

The bill was then referred to the Assembly Committee on Public Safety. Comments to the bill include this telling one: *"This bill requires little or no intent on the part of the purchaser of alcohol for underage persons.* There is no requirement that GBI [great bodily injury] or death be foreseeable to the purchaser, other than the general knowledge that alcohol can sometimes lead to dangerous situations. As is stated above, a commercial vendor is only found civilly liable and guilty of a misdemeanor if he or she sells to an obviously intoxicated minor. [¶] Should this bill be amended to provide that the purchaser must know, or reasonably should have known, that GBI was a likely result of the purchase of the alcohol for the underage person?" (Assem. Com. on Public Safety, Analysis of Amend. to Assem. Bill No. 2029 (1997–1998 Reg. Sess.) Apr. 14, 1998, italics added, underscoring in original.)

Before the full Assembly a week later, Assembly Bill No. 2029 was again amended. Proposed section 25658(c) was then to read in pertinent part: "Any person who violates subdivision (a) by purchasing an alcoholic beverage for a person under the age of 21 years and the person under the age of 21 years thereafter consumes the alcohol and thereby proximately causes great bodily injury to himself, herself, or any other person, is guilty of a public offense punishable by imprisonment in a county jail not to exceed one year or in state prison. *In order to be punishable by imprisonment in the state prison pursuant to this subdivision: [¶] (1) The purchaser shall have known or reasonably should have known that the person for whom he or she was purchasing was under the age of 21 years . . . ."* (Assem. Amend. to Assem. Bill No. 2029 (1997–1998 Reg. Sess.) Apr. 21, 1998, italics added.)

As the Legislative Counsel's Digest for this proposed amendment explained, "[t]he bill would require that to be punishable as a felony the purchaser must have known or reasonably should have known that the person for whom he or she was purchasing was under the age of 21 years . . . ." (Legis. Counsel's Dig., Assem. Bill No. 2029 (1997–1998 Reg. Sess.) Apr. 21, 1998, italics omitted.)

The substance of Assembly Bill No. 2029 was then added to Assembly Bill No. 1204, then before the state Senate. (Sen. Amend. to Assem. Bill No. 1204 (1997–1998 Reg. Sess.) June 3, 1998.) In the Senate Committee on Public Safety, a question was raised concerning the foreseeability of the injury caused by the underage drinker. "As the opposition notes, this provision would provide a potential prison sentence for an act not directly caused by the person. A 21 year old college student who gives a 20 year old friend a beer could be subject to an increased misdemeanor penalty if that 20 year old friend were to trip down a flight of stairs after drinking the beer and breaks his/her arm." (Sen. Com. on Public Safety, Analysis of Amend. to Assem. Bill No. 1204 (1997–1998 Reg. Sess.) June 3, 1998.) "SHOULD WE PUNISH ONE PERSON FOR THE UNFORESEEABLE SUBSEQUENT BEHAVIOR OF ANOTHER BECAUSE THE FIRST PERSON COMMITTED AN OFFENSE?" (*Ibid.*)

Although a concern was raised in the Senate committee about the foreseeability of the injury, no question was raised about the felony provision or its requirement that the offender knew or should have known the age of the person for whom he was buying alcohol. Nevertheless, Assembly Bill No. 1204 was thereafter amended to delete the felony option together with its intent requirement, leaving section 25658(c) as a misdemeanor provision only, with no explicit intent requirement. (Sen. Amend. to Assem. Bill

No. 1204 (1997–1998 Reg. Sess.) June 30, 1998.) It was this version that was eventually passed, enrolled, sent to the Governor, and signed into law.[9]

The Court of Appeal below reasoned: "A review of this history shows that the Legislature considered incorporating an express mental state element into the statute when the subdivision could be prosecuted as a felony. It may be inferred that the Legislature intended the misdemeanor to be a strict liability statute when it deleted the felony provision without moving the requirement of a specific mental state into the remaining misdemeanor portion of subdivision (c)." While this inference is strong, petitioner contends the appellate court's view of the legislative history is simplistic because it fails to view the totality of the legislative history, which indicates a legislative concern with not only the potential offender's knowledge of the drinker's age, but also with his or her subjective awareness of the foreseeability of the harm caused by the drinker.

As our recitation of the legislative history demonstrates, the Legislature was, at various points, concerned *both* with the possibility that one could be convicted of a felony under the new law even though unaware of the age of the person for whom alcohol was bought *and* with the possibility the purchaser could be convicted although unaware the drinker intended to become intoxicated or to drive. But that the Legislature may have entertained multiple concerns about the proposed law does not undermine the obvious inference that in deleting the felony option, with its attached intent requirement, the Legislature intended to leave the new crime a misdemeanor only, with no intent requirement.

Interpretation of section 25658(c) as a strict liability offense is bolstered by a consideration of other statutes addressing related issues, all of which appear in the same portion of the Business and Professions Code as does section 25658. (See art. 3 ["Women and Minors"], ch. 16 ["Regulatory Provisions"], div. 9 ["Alcoholic Beverages"].) For example, section 25658.2, subdivision (a) provides: "A parent or legal guardian who *knowingly* permits his or her child . . . under the age of 18 years, to consume an alcoholic beverage . . . at the home of the parent or legal guardian [under certain conditions] is guilty of [a] misdemeanor . . . ." (Italics added.) Similarly, section 25657, subdivision (b) provides: "In any place of business where alcoholic beverages are

---

[9] As the Court of Appeal explained: "The substance of [Assembly Bill No.] 1204 was then incorporated into a related bill proceeding through the Senate, [Senate Bill No.] 1696, to ensure that its provisions would not be super[s]eded if both bills were enacted and [Senate Bill No.] 1696 was chaptered last. (Legis. Counsel's Dig., Sen. Bill No. 1696, Stats. 1998 (1997–1998 Reg. Sess.).) ([Senate Bill] 1696.) In fact, that is what happened. [Assembly Bill No.] 1204 was chaptered on September 14, 1998. [Senate Bill] 1696 was chaptered on September 18, 1998. Section 25658 was amended to include subdivision (c) by Senate Bill 1696."

sold to be consumed upon the premises, to employ or *knowingly permit* anyone to loiter in or about said premises for the purpose of begging or soliciting any patron or customer of, or visitor in, such premises to purchase any alcoholic beverages for the one begging or soliciting [is guilty of a misdemeanor]." (Italics added.) Finally, section 25659.5, subdivision (d) provides: "Any purchaser of keg beer who *knowingly* provides false information as required by subdivision (a) is guilty of a misdemeanor." (Italics added.)

■ Because the wording of these statutes shows the Legislature, if it wishes, knows how to express its intent that knowledge be an element of an offense, the absence of such a requirement in section 25658(c) indicates it intended no such requirement. (*People v. Murphy* (2001) 25 Cal.4th 136, 159 [105 Cal.Rptr.2d 387, 19 P.3d 1129].) "It is a settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes." (*People v. Norwood* (1972) 26 Cal.App.3d 148, 156 [103 Cal.Rptr. 7].) In sum, the legislative history and context of section 25658(c) tilts heavily in favor of criminal liability without proof of knowledge or intent.

The second factor we find significant is the severity of the punishment. (*Jorge M.*, *supra*, 23 Cal.4th at p. 873.) The greater the punishment for a particular crime, the more likely the Legislature intended to require the state to prove an offender acted with some culpable mental state. "For crimes which impose severe punishment, '. . . the usual presumption that a defendant must know the facts that make his conduct illegal should apply.' (*Staples v. United States* [(1994)] 511 U.S. [600,] 619 [128 L.Ed.2d 608, 114 S.Ct. 1793].)" (*People v. Coria* (1999) 21 Cal.4th 868, 878 [89 Cal.Rptr.2d 650, 985 P.2d 970].) For example, we reasoned in *Jorge M.* that the "Legislature's choice of potential felony [rather than misdemeanor] punishment . . . reinforces the presumption expressed by [Penal Code] section 20 and suggests that correspondingly strong evidence of legislative intent is required to exclude mens rea from the offense." (*Jorge M.*, *supra*, at p. 880.)

Section 25658(c) is punishable as a misdemeanor, not a felony. In general, punishment for a misdemeanor cannot exceed confinement in a county jail for up to six months, a fine not to exceed $1,000, or both. (Pen. Code, § 19.) The maximum confinement for a misdemeanor is one year in jail. (*Id.*, § 19.2.) A violation of section 25658(c), though not a felony, provides for a punishment greater than that prescribed for the typical misdemeanor because a violator "shall be punished by imprisonment in a county jail *for a minimum term of*

*six months* not to exceed one year, by a fine not exceeding one thousand dollars ($1,000), or by both imprisonment and fine." (§ 25658, subd. (e)(3), italics added.)

Although the heightened penalty tends to distinguish section 25658(c) from the ordinary misdemeanor and suggests we should imply a mental element to this crime, a higher than normal penalty does not necessarily preclude a crime from being a public welfare offense; the severity of the punishment is, instead, a factor in the overall calculus in determining whether proof of a mental element must be implied. Here, the punishment falls somewhere in the middle, greater than that prescribed for the typical misdemeanor, but less than that for the typical wobbler or felony.

In addition to the potential length of possible incarceration, petitioner contends the reputational injury and personal disgrace he will suffer should his conviction for violating section 25658(c) be allowed to stand are factors relevant to determining the severity of the punishment. We agree. Discussing this issue, Justice Traynor opined for this court: "Under many statutes enacted for the protection of the public health and safety, e.g., traffic and food and drug regulations, criminal sanctions are relied upon even if there is no wrongful intent. *These offenses usually involve light penalties and no moral obloquy or damage to reputation.* Although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction. The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the interest of enforcement." (*People v. Vogel* (1956) 46 Cal.2d 798, 801, fn. 2 [299 P.2d 850], italics added (*Vogel*), quoted in *Jorge M., supra,* 23 Cal.4th at p. 872.) At issue in *Vogel* was the crime of bigamy. Justice Traynor further explained: "The severe penalty for bigamy [then up to a $5,000 fine, confinement in county jail, or in state prison for up to 10 years], *the serious loss of reputation conviction entails,* the infrequency of the offense, and the fact that it has been regarded for centuries as a crime involving moral turpitude, make it extremely unlikely that the Legislature meant to include the morally innocent to make sure the guilty did not escape." (*Vogel, supra,* at p. 804, fn. omitted, italics added.)

More recently, the Court of Appeal addressed the question whether the crime of misdemeanor animal cruelty (Pen. Code, § 597f, subd. (a)) required a showing of either civil or criminal negligence. (*People v. Speegle* (1997) 53 Cal.App.4th 1405 [62 Cal.Rptr.2d 384].) The court found the reputational injury associated with the criminal mistreatment and neglect of animals to justify the higher, criminal negligence standard. "In our society, those who mistreat animals are the deserved object of obloquy, and their conduct is wrongful of itself and not just as a matter of legislative declaration." (*Id.* at p. 1415.)

Like the bigamist in *Vogel, supra,* 46 Cal.2d 798, and the defendant who kept, neglected, and starved 200 poodles in *People v. Speegle, supra,* 53 Cal.App.4th 1405, a person who purchases alcoholic beverages for an underage person, enabling that person to become intoxicated and to cause "great bodily injury or death," may expect severe censure from the general public. That drunk drivers, and especially underage drunk drivers, cause death and destruction on our highways is common knowledge, and anyone contributing to that societal tragedy would suffer significant reputational injury. Considering the heightened misdemeanor penalty together with the societal condemnation a violator of section 25658(c) would encounter, we conclude the severity of the punishment weighs in favor of requiring some intent element for section 25658(c).

The third factor we find particularly pertinent is the seriousness of the harm or injury to the public. (*Jorge M., supra,* 23 Cal.4th at p. 873.) The more serious and widespread the expected harm from the prohibited conduct, the more likely the Legislature intended to create a public welfare offense for which no proof of knowledge or intent is required. We explained the significance of this factor in *Jorge M.*: "The AWCA [Assault Weapons Control Act] is a remedial law aimed at protecting the public against a highly serious danger to life and safety. The Legislature presumably intended that the law be effectively enforceable, i.e., that its enforcement would actually result in restricting the number of assault weapons in the hands of criminals and the mentally ill. In interpreting the law to further the legislative intent, therefore, we should strive to avoid any construction that would significantly undermine its enforceability. This is not to suggest this court would or should read any element out of a criminal statute simply to ease the People's burden of proof. But, when a crime's statutory definition does not expressly include any scienter element, the fact the Legislature intended the law to remedy a serious and widespread public safety threat militates against the conclusion it also intended impliedly to include in the definition a scienter element especially burdensome to prove." (*Id.* at pp. 880–881.)

The harm that section 25658(c) aims to avoid is the death and great bodily injury of underage drivers, their passengers and other collateral victims. Unlike section 25658(a), which criminalizes the mere furnishing, selling or giving of alcohol to an underage person, section 25658(c) includes two additional and significant elements: consumption of the beverage and serious injury or death. One may fairly conclude the law addresses a "serious and widespread public safety threat." (*Jorge M., supra,* 23 Cal.4th at p. 881.) Implying an intent or knowledge requirement would necessarily undermine the statute's enforceability and reduce its effectiveness in reducing the

number of deaths and injuries associated with underage drinking. We conclude this factor militates against inferring an intent requirement for section 25658(c).

■ Considering these factors together, we find the legislative history of section 25658(c), its context, and the seriousness of the harm to the public particularly persuasive in demonstrating that no knowledge-of-age requirement should be imposed. Although the public obloquy for violation of the statute and the minimum of six months in jail for its violation result in a more severe penalty than normal for a misdemeanor offense, section 25658(c) remains a misdemeanor, not a felony nor even a wobbler. On balance, we are convinced the legislative history provides the strongest evidence of legislative intent. That history indicates the Legislature intended that a conviction of violating section 25658(c) does not require a showing the offender had knowledge of the imbiber's age or other criminal intent. Accordingly, although the People must prove an accused "purchas[ed]" an alcoholic beverage "for" an underage person, the People need not also prove the accused knew that person was under 21 years of age.

## D. *The Mistake of Fact as to Age Defense*

Although the People need not prove knowledge of age in order to establish a violation of section 25658(c), the question remains whether petitioner was entitled to raise a mistake of fact defense concerning Turpin's age. The Penal Code sets forth the broad outlines of the mistake of fact defense. Section 26 of that code provides: "All persons are capable of committing crimes except . . . [¶] . . . [¶] . . . Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent." Thus, for example, in a case where a defendant was convicted of murder for shooting his wife, but claimed he honestly believed the gun was not loaded, the trial court erred by refusing to instruct the jury that a person who entertains "an honest and reasonable belief in the existence of certain facts and circumstances which, if true, would make such act and omission lawful, is not guilty of a crime." (*People v. Goodman* (1970) 8 Cal.App.3d 705, 709 [87 Cal.Rptr. 665].)[10] Similarly, in a case where a defendant, charged with forcible rape and kidnapping, claimed a reasonable belief that the victim consented, we held the jury should have been instructed on a mistake of fact because if a reasonable yet mistaken belief in consent was proved, the accused would not "possess the wrongful intent that is a

---

[10] *People v. Goodman, supra,* 8 Cal.App.3d 705, was disapproved on another ground in *People v. Beagle* (1972) 6 Cal.3d 441, 451–452 [99 Cal.Rptr. 313, 492 P.2d 1].

prerequisite under Penal Code section 20 to a conviction of either kidnapping . . . or rape by means of force or threat." (*People v. Mayberry* (1975) 15 Cal.3d 143, 155 [125 Cal.Rptr. 745, 542 P.2d 1337].)

As a general matter, however, a mistake of fact defense is not available unless the mistake disproves an element of the offense. (*People v. Parker* (1985) 175 Cal.App.3d 818, 822 [223 Cal.Rptr. 284]; 1 Witkin & Epstein, Cal. Criminal Law, *supra*, Defenses, § 39, p. 372.) Thus, in *Parker*, the defendant illegally entered a structure, allegedly believing it was a commercial building. Because the building was in fact a residence, he was charged with and convicted of first degree burglary. (Pen. Code, § 459.) On appeal, the appellate court rejected his argument that the trial court had erred by failing to instruct the jury that his mistaken belief the building was an uninhabited structure constituted an affirmative defense. (*Parker*, *supra*, at p. 821.) The appellate court reasoned that because the prosecution was not required to prove a defendant knew the building entered was a residential one in order to convict of burglary, "ignorance concerning the residential nature of a building does not render a defendant's unlawful entry into it with a felonious intent innocent conduct." (*Id.* at p. 822.)

Of course, murder (*People v. Goodman*, *supra*, 8 Cal.App.3d 705), rape (*People v. Mayberry*, *supra*, 15 Cal.3d 143) and burglary (*People v. Parker*, *supra*, 175 Cal.App.3d 818) all require proof of criminal intent, whereas public welfare offenses such as a violation of section 25658(c) do not. We addressed the mistake of fact defense for public welfare offenses in *People v. McClennegen* (1925) 195 Cal. 445 [234 P. 91], which involved a joint prosecution of several defendants for violating the state's antisyndicalism statute. It was alleged the defendants conspired to effect a change in the "industrial ownership and control in the existing economic and social system" and to "effect political changes in this state and in the United States of America by means and methods denounced by [the antisyndicalism] act." (*Id.* at p. 448.) Although we ultimately found the antisyndicalism act did not establish a public welfare crime, we discussed the mental state required for such offenses, which we denoted "statutory crimes." "The commission of various acts are made punishable under our criminal procedure, even though the doer be ignorant of the fact that the doing of the act constitutes an offense. *A mistake of fact, or a want of intent, is not in every case a sufficient defense for the violation of a criminal statute.* Statutes enacted for the protection of public morals, public health, and the public peace and safety are apt illustrations of the rule just announced. [Citations.] . . . [¶] '. . . [T]herefore if a criminal intent is not an essential element of a statutory

crime, it is not necessary to prove any intent in order to justify a conviction. Whether a criminal intent or guilty knowledge is a necessary element of a statutory offense is a matter of construction to be determined from the language of the statute, in view of its manifest purpose and design. There are many instances in recent times where the Legislature in the exercise of the police power has prohibited, under penalty, the performance of a specific act. The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted *and knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt*. The only fact to be determined in these cases is whether the defendant did the act. In the interest of the public the burden is placed upon the actor of ascertaining at his peril whether his deed is within the prohibition of any criminal statute.' " (*Id.* at pp. 469–470, 234 P. 91, italics added.) In other words, for public welfare offenses for which intent need not be proved, a mistake of fact defense was unavailable.

*People v. Schwartz, supra*, 28 Cal.App.2d Supp. 775, illustrates the point. That case involved the sale of impure or adulterated food, a public welfare offense. The court there explained that the defendant "does not need to engage in that business; but if he does engage in that business the law will not permit him to evade his responsibility to the public, declared by law, *by pleading ignorance* of the quality or contents of that which he may lawfully sell only if it is pure." (*Id.* at p. 778, italics added.) Similarly, in *People v. Bickerstaff* (1920) 46 Cal.App. 764 [190 P. 656], a case involving the sale of a beverage with greater than 1 percent alcohol, "it is not a defense for the defendant to prove that he did not know the liquor sold by him contained the prohibited amount of alcohol." (*Id.* at p. 771.)

Notwithstanding the foregoing, the modern trend is to require proof of some criminal intent or knowledge in order to secure a criminal conviction. (*People v. Simon, supra*, 9 Cal.4th at p. 521.) *Vogel, supra*, 46 Cal.2d 798, is illustrative. In *Vogel*, the defendant was charged with bigamy in violation of Penal Code section 281, which at that time provided that "[e]very person having a husband or wife living, who marries any other person . . . is guilty of bigamy." The trial court rejected the defendant's proffered evidence that he reasonably believed his first wife had divorced him, citing *People v. Kelly* (1939) 32 Cal.App.2d 624, 625 [90 P.2d 605], which held that "[a] second marriage under an erroneous assumption that the first marriage has been annulled or dissolved is not a defense to a charge of bigamy."

The *Vogel* court agreed the People need not establish the defendant knew he was still married to his first wife, but need only prove he was in fact still

married to her. Nevertheless, we concluded the defendant was entitled to raise a mistake of fact as an affirmative defense, explaining that he would not be "guilty of bigamy, if he had a bona fide and reasonable belief that facts existed that left him free to remarry." (*Vogel, supra,* 46 Cal.2d at p. 801; see also *People v. Stuart* (1956) 47 Cal.2d 167 [302 P.2d 5] [mistake of fact defense available to charge of selling adulterated drug]; *In re Marley, supra,* 29 Cal.2d at p. 530 [suggesting but not deciding mistake of fact defense available to charge of shortweighting].)

Most notable, perhaps, of this line of cases is *People v. Hernandez* (1964) 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673]. In that case, the defendant was charged with statutory rape (now called unlawful sexual intercourse; see Pen. Code, § 261.5), a crime that does not require proof the defendant knew the prosecutrix's age. The defendant claimed "he had in good faith a reasonable belief that the prosecutrix was 18 years or more of age" (*Hernandez, supra,* at p. 530), whereas in fact she was 17 years nine months old. Since the 19th century the law had made the defense of mistake of fact as to age unavailable for this crime. (*People v. Ratz* (1896) 115 Cal. 132, 134–135 [46 P. 915].) In an example of an opinion's venerability offering it no protection, this court overruled *Ratz* and held the defendant was entitled to raise a defense of mistake of fact. Citing Penal Code section 20 and *Vogel, supra,* 46 Cal.2d 798, we stated: "We are persuaded that the reluctance to accord to a charge of statutory rape the defense of a lack of criminal intent has no greater justification than in the case of other statutory crimes, where the Legislature has made identical provision with respect to intent. ' "At common law an honest and reasonable belief in the existence of circumstances, which, if true, would make the act for which the person is indicted an innocent act, has always been held to be a good defense. . . . [I]t has never been suggested that these exceptions do not equally apply to the case of statutory offenses unless they are excluded expressly or by necessary implication." ' " (*Hernandez, supra,* at pp. 535–536.)

▮ These cases follow the modern trend away from imposing strict liability for criminal offenses and to require some showing of knowledge or criminal intent, even if only criminal negligence. (See *Jorge M., supra,* 23 Cal.4th at p. 887 ["the People bear the burden of proving the defendant *knew or should have known* the firearm possessed the characteristics bringing it within the" Assault Weapons Control Act].) In addition to interpreting statutory language to require some showing of criminal intent, as we did in *Jorge M.,* we may permit a conviction absent evidence of knowledge, but allow a defendant to raise a mistake of fact in his defense, as in *Vogel, supra,* 46 Cal.2d 798, and *People v. Hernandez, supra,* 61 Cal.2d 529. Although by

tradition (and due process) the People often have the burden to prove knowledge or intent, shifting the burden to the defendant to prove his lack of guilty or criminal intent is in some cases also permissible. Thus, for example, addressing the crime of bigamy in *Vogel*, we explained that "guilty knowledge" was "formerly a part of the definition of bigamy [but] was omitted from [Penal Code] section 281 *to reallocate the burden of proof on that issue* in a bigamy trial. Thus, the prosecution makes a prima facie case upon proof that the second marriage was entered into while the first spouse was still living [citations], and his bona fide and reasonable belief that facts existed that left the defendant free to remarry is a defense to be proved by the defendant." (*Vogel, supra*, at pp. 802–803, italics added, fn. omitted; see also *People v. Taylor* (2001) 93 Cal.App.4th 933, 952–953 [114 Cal.Rptr.2d 23] (conc. & dis. opn. of Morrison, J.) [suggesting the same reallocation of the burden of proving intent in a prosecution for possession of a cane sword in violation of Pen. Code, § 12020, subd. (a)(1)].)

As in *Vogel, supra*, 46 Cal.2d 798, we conclude that, although the prosecution need not prove an offender's knowledge of age in order to establish a violation of section 25658(c), petitioner was entitled to raise an affirmative defense, for which he would bear the burden of proof, that he honestly and reasonably believed Turpin was at least 21 years old. Recognizing the viability of a mistake of fact defense is consistent with the modern trend away from strict liability for criminal offenses as well as with Penal Code section 20 and the statutory scheme of which Business and Professions Code section 25658(c) is but a part. Article 3, chapter 16, division 9 of the Business and Professions Code contains both section 25658(c) and 25660, and the two statutes must be construed together. (*Renee J. v. Superior Court, supra*, 26 Cal.4th at p. 743.) Section 25660, relating to licensees, provides in pertinent part: "Proof that the defendant-licensee, or his employee or agent, *demanded, was shown and acted in reliance upon such [described] bona fide evidence* [of majority and identity] in any transaction, employment, use or permission forbidden by Sections 25658, 25663 or 25665 *shall be a defense* to any criminal prosecution therefor or to any proceedings for the suspension or revocation of any license based thereon." (Italics added.) Section 25660 thus specifically authorizes licensees to raise a mistake of fact defense as to the age of a customer to whom alcohol was sold or served. "Although a violation of section 25658 can occur despite the seller's lack of knowledge that the purchaser is under the age of 21, the seller's liability is not absolute because 'the Legislature has furnished a procedure whereby he may protect himself, namely, . . . section 25660 [allowing the seller to rely on bona fide evidence of majority and identity].' " (*Provigo Corp. v. Alcoholic Beverage Control Appeals Bd., supra*, 7 Cal.4th at pp. 564–565.)

Does section 25660 suggest the Legislature's intent to permit a similar defense to nonlicensees? We hold that it does. A contrary conclusion would lead to an absurd result (see, e.g., *In re J. W., supra*, 29 Cal.4th at p. 210; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77 [124 Cal.Rptr.2d 519, 52 P.3d 695]), to wit, while licensees, who may serve alcoholic beverages to dozens or even hundreds of customers in a single night, can demand, check and act in reliance on bona fide evidence of identity and age and thereby enter a safe harbor, protected from criminal liability, a nonlicensee who serves alcoholic beverages only occasionally and to just a few persons, and who similarly demands, checks and acts in reliance on bona fide evidence of identity and age, and may honestly and reasonably believe the person for whom he or she purchased alcohol was over 21 years old, would absent a mistake of fact defense be subject to criminal liability, punishable by a minimum of six months in jail. (§§ 25658(c), 25658, subd. (e)(3).) The Legislature could not have intended this disparity of treatment.

We conclude the trial court erred in refusing petitioner's offer to prove he honestly and reasonably believed Turpin was over 21 years old.

CONCLUSION

We reach the following conclusions: (1) Section 25658(c) is not limited to the shoulder tap scenario, but applies whenever an offender *purchases* alcoholic beverages *for* an underage person; (2) section 25658(c) does not apply in the typical social party host situation, because the host does not purchase alcohol for any particular guest; (3) the prosecution need not prove an offender knew (or should have known) the age of the person to whom he or she furnished alcohol in order to prove a violation of section 25658(a); (4) the prosecution need not prove an offender knew (or should have known) the age of the person for whom he or she purchased alcohol in order to prove a violation of section 25658(c); and (5) a person charged with violating section 25658(c) may defend against the charge by claiming an honest and reasonable belief that the person for whom he or she purchased alcohol was 21 years of age or older. The defendant bears the burden of proof for this affirmative defense.

Because the trial court refused to admit evidence that petitioner believed Turpin was over 21 years old, it erred. The judgment of the Court of Appeal denying the petition for writ of habeas corpus is reversed and the cause remanded to that court. The Court of Appeal is directed to grant the petition for a writ of habeas corpus, vacate the judgment of the Sacramento County Superior Court in *People v. Michael Lee Jennings*, No. 00M07614, and remand the case to the superior court for further proceedings. The clerk of the

Court of Appeal is directed to remit a certified copy of this opinion to the superior court for filing, and respondent shall serve another copy thereof on the prosecuting attorney in conformity with Penal Code section 1382, subdivision (a)(2). (See *In re Gay* (1998) 19 Cal.4th 771, 830 [80 Cal.Rptr.2d 765, 968 P.2d 476].)

George, C. J., Kennard, J., Baxter, J., Chin, J., Brown, J., and Moreno, J., concurred.