Opinion
 

 DAVIS, J.
 

 This case lies in the dark shadows of 101 Dalmatians. The prosecution initially charged the defendant with 27 counts of felony animal
 
 *1409
 
 cruelty (Pen. Code, § 597, subd. (b) [undesignated section references will be to this code]) and 228 counts of misdemeanor animal neglect (§ 597f, subd. (a)). Ultimately, the jury convicted her of eight counts of felony animal cruelty (making the specific finding she subjected the victims to unnecessary suffering [§ 599b]) and one count of misdemeanor animal neglect. Following a hearing, the court ordered her to reimburse the costs of impounding her animals in the amount of $265,000 (rounded). (§ 597, subd. (f).) The trial court sentenced the unrepentant defendant to state prison for the middle term of two years on one felony count and ran the sentences for the subordinate felonies concurrently; the court deemed her consecutive misdemeanor sentence satisfied out of her presentence custody. On appeal, she complains section 597 is unconstitutionally vague, her trial violated double jeopardy, the instructions were erroneous, and she should not be subject to reimbursing the full costs of the consequences of her misconduct. Except for an error with no significant effect on the structure of defendant’s sentence, we shall affirm.
 

 Facts
 

 The issues raised in the defendant’s appeal renders the deplorable circumstances under which her animals lived largely irrelevant. We will accordingly confine ourselves to an abbreviated summary of this lengthy record.
 

 Animal control officers seized two hundred poodles, one cat, and three horses from the defendant’s property in July 1993. These were not all of the dogs present on her property, because the defendant attempted to interfere with the collection process (releasing some and shooing them into the woods) and others evaded capture.
 
 [1]
 
 Her freezer contained both food and the frozen corpses of two mature dogs and five puppies, which the defendant claimed were part of an unspecified experiment. The county’s director of public health, who came to the property at the request of the officers, testified that in his 35 years of medical experience “in the United States and overseas, I have not seen anything that was as unsanitary and filthy as what I saw on the 27th of July, 1993.” The defendant’s own veterinarian testified that in his 26 years of experience he had never seen an animal-care facility in worse condition.
 

 Neither food nor water appeared to be readily available to the dogs. While trying to capture dogs in the defendant’s trailer, the officers knocked the gelatinous contents of a cup of spoiled milk onto the feces-encrusted floor, at which point “[i]t was like a Pirhana feeding frenzy that you see. They were
 
 *1410
 
 jumping on one another, growling, trying to get to that milk to eat it.” When the defendant began to fill small water dishes inside and out, large numbers of dogs would form a knot in straining to drink from the dishes.
 

 The animals were brought to the Northwest Society for the Prevention of Cruelty to Animals (NWSPCA). Two veterinarians who examined the dogs seized in July testified the poodles generally had excessive matting of their fur (some mats containing maggots), fleas, eye and ear problems, ear mites, intestinal parasites, rotted teeth, and mouth disease, and they were underweight, anemic, and malnourished. A veterinarian who examined a number of the dogs seized in November testified to similar findings.
 

 In essence, the defendant claimed she took good care of her animals. In her view any health problems occurred only after the NWSPCA had custody of them.
 

 Thirty-four of the dogs died or required euthanasia. The NWSPCA found homes for 119,
 
 [2]
 
 and transferred 78 to other humane society shelters for adoption by December 1993.
 
 [3]
 
 The burden of returning this massive number of dogs to an adoptable state nearly bankrupted the private facility and left it with little or no capability of caring for other animals. In addition, the NWSPCA was forced to defend seven lawsuits filed by the defendant, and its employees were threatened by the defendant’s relatives.
 

 In the second amended complaint filed in January 1995, the prosecutor based the eight counts of felony animal cruelty on the condition of eight different dogs, all of which required being put down because of their irremediably poor state of health. The prosecutor based the count of misdemeanor animal neglect on the failure to trim a pony’s “grossly overgrown” front hooves, which had reached the point where they had split and peeled, making it difficult for the pony to walk without pain. (The NWSPCA was able to trim the feet properly once it had the pony in custody, allowing it to walk normally.)
 

 Discussion
 

 I
 

 The defendant contends she was convicted of violating an unconstitutionally vague statute. Specifically, she claims the prohibitions against
 
 *1411
 
 depriving an animal of “necessary” sustenance, drink, or shelter; subjecting an animal to “needless suffering”; or failing to provide an animal with “proper” food or drink (§ 597, subd. (b)) are so general that a person of common intelligence must necessarily guess at what course of conduct it is lawful to pursue.
 
 [4]
 
 She also maintains that a scienter of criminal negligence subjects the statute to varying interpretations. We disagree.
 

 “Although a particular statute is somewhat vague or general in its language because of difficulty in defining the subject matter with precision, it will be upheld if its meaning is reasonably ascertainable.”
 
 (People
 
 v.
 
 Deskin
 
 (1992) 10 Cal.App.4th 1397, 1400 [13 Cal.Rptr.2d 391].) “It is not necessary that a statute furnish detailed plans and specifications of the acts or conduct prohibited. The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas [with] adequate interpretation in common usage and understanding.”
 
 (Smith
 
 v.
 
 Peterson
 
 (1955) 131 Cal.App.2d 241, 246, 250 [280 P.2d 522, 49 A.L.R.2d 1194] [upholding ban on mufflers emitting “excessive” or “unusual” noise].) So long as the language embodies an objective concept, it is constitutionally concrete.
 
 (People
 
 v.
 
 Curtiss
 
 (1931) 116 Cal.App. Supp, 771, 779 [statute banning infliction of “unjustifiable” pain constitutional].) There are an infinite number of ways in which the callously indifferent can subject animals in their care to conditions which make the humane cringe. It is thus impossible for the Legislature to catalogue every act which violates the statute. Nonetheless, the terms “necessary,” “needless,” and “proper" all give fair notice of an objective standard of reasonableness in the provision of sustenance, drink, and shelter, and in the avoidance of infliction of suffering. The notice component of due process does not require any more.
 
 (Ibid.)
 

 As for her subsidiary argument regarding the “varying interpretations” which can be given to criminal negligence, this measure of scienter is nonetheless premised on the objective standard of reasonableness as well.
 
 (People
 
 v.
 
 Rippberger
 
 (1991) 231 Cal.App.3d 1667, 1682 [283 Cal.Rptr.
 
 *1412
 
 111].) The fact a defendant must assess “the point at which [a] course of conduct becomes criminally negligent” does not violate due process.
 
 (Walker
 
 v.
 
 Superior Court
 
 (1988) 47 Cal.3d 112, 142 [253 Cal.Rptr. 1, 763 P.2d 852];
 
 People
 
 v.
 
 Deskin, supra,
 
 10 Cal.App.4th at p. 1403.)
 

 II
 

 The defendant contends the trial court erred when it denied her motion to dismiss the complaint on the ground of double jeopardy. (U.S. Const., 5th Amend.) She claims
 
 she
 
 was “punished” by the confiscation of her animals for treatment and placement, and thus filing a criminal complaint afterward amounted to an effort to punish her twice for the same conduct.
 

 The argument is without merit. As the People properly point out, her reasoning leads to the abhorrent result that parents could not be criminally punished for abusing their children after the juvenile court places them in a different home or terminates parental rights. Moreover, even were we to consider the animals mere chattel and the confiscation no more than a “forfeiture,” the United States Supreme Court concluded (after the defendant filed her opening brief) that “civil forfeitures ... do not constitute ‘punishment’ for purposes of the Double Jeopardy Clause.”
 
 (United States
 
 v.
 
 Ursery
 
 (1996) 518 U.S. _, _ [116 S.Ct. 2135, 2138, 135 L.Ed.2d 549, 557].)
 

 III
 

 A
 

 In connection with the offense of animal cruelty, the court instructed the jury:
 

 “Defendant is accused in Counts 1 though 8 of the information of Cruelty to an Animal, in violation of Penal Code section 597(b), a felony.
 

 “Every person who causes an animal to be deprived of necessary sustenance, drink or shelter, or, who, having care or custody of an animal, subjects the animal to needless suffering or fails to provide the animal with proper food, drink, or shelter, in a grossly negligent manner, is guilty of felony cruelty to an animal.
 

 “Deprivation of necessary sustenance, drink, or shelter is unlawful when a person commits an act or omission inherently dangerous to animal life or safety or . . . which would inherently produce danger to an animal’s life.
 

 
 *1413
 
 “Subjecting an animal to needless suffering and failure to provide an animal with proper food, drink or shelter are both unlawful when a person . . . commits an act or omission which would inherently produce danger to an animal’s life.
 

 “In order to prove such a crime, each of the following elements must be proved:
 

 “(1) That a person has custody or is responsible for providing care to an animal
 

 “(2) That person committed a grossly negligent act or omission
 

 “(3) That act or omission caused danger to an animal’s life.”
 

 Engaging in the proscribed hypertechnical parsing of instructions
 
 (People
 
 v.
 
 Beardslee
 
 (1991) 53 Cal.3d 68, 89 [279 Cal.Rptr. 276, 806 P.2d 1311];
 
 People
 
 v.
 
 Warren
 
 (1988) 45 Cal.3d 471, 488 [247 Cal.Rptr. 172, 754 P.2d 218]) rather than determining the reasonably likely interpretation given them by reasonable jurors
 
 (People
 
 v.
 
 Payton
 
 (1992) 3 Cal.4th 1050, 1072 [13 Cal.Rptr.2d 526, 839 P.2d 1035]), the defendant contends these instructions allowed the jury to convict her of animal cruelty “if she committed a grossly negligent act that caused danger to an animal’s life. Thus, [she argues,] the instruction did not require the jury to find that [she] committed any of the acts prohibited by section 597, subdivision (b) before returning a guilty verdict.”
 

 We do not agree. The second paragraph connects the standard of gross negligence with the acts or omissions proscribed by the statute.
 
 [5]
 
 A reasonable juror necessarily will correlate the final paragraph listing the elements with the second paragraph, so the juror will understand that the reference to “act or omission” in the final paragraph is a reference to the acts and omissions proscribed by the statute. Thus, as written, the instruction is correct. To the extent the defendant wished the concept she now argues to be explained at greater length, it was her obligation at trial to request this amplification.
 
 (People
 
 v.
 
 McNeill
 
 (1980) 112 Cal.App.3d 330, 340 [169 Cal.Rptr. 313].) Having failed to do so, she cannot complain on appeal.
 

 B
 

 In connection with the offense of animal neglect, the court instructed the jury:
 

 
 *1414
 
 “Defendant is accused in Count[] 9 ... of the information of Animal Neglect, in violation of Penal Code section 597f, a misdemeanor.
 

 “Every owner or possessor of any animal who permits the animal to be . . . without proper care and attention is guilty of misdemeanor neglect of an animal.
 

 “In order to prove such a crime, each of the following elements must be proved:
 

 “(1) The owner or possessor of an animal
 

 “(2) committed a negligent act or omission
 

 “(3) which . . . would foreseeably cause harm to an animal.”
 

 “In the crime[] charged in Count[]
 
 9 ,
 
 there must exist:
 

 “(1) A union or joint operation of the act or omission and negligence.
 

 “(2) In order to find negligence, you must find that the defendant was conscious, acting voluntarily, and that a reasonable person in the defendant’s position would have foreseen that harm to the animal would result from the care that the defendant was giving it. . . .”
 

 The defendant again engages in hypertechnical parsing of the instruction, asserting the resulting incomplete definition of the offense is the interpretation given it by the jury to her prejudice. We need not unravel the defendant’s reasoning in this respect in light of an independent flaw in these instructions also cited by the defendant.
 

 In
 
 People
 
 v.
 
 Untiedt
 
 (1974) 42 Cal.App.3d 550 [116 Cal.Rptr. 899], the court discussed sua sponte the sufficiency of the instructions defining a violation of section 597f.
 
 [6]
 
 (42 Cal.App.3d at p. 554.) The court concluded civil negligence was the appropriate mental state without any consideration of section 20.
 
 [7]
 
 (42 Cal.App.3d at p. 555.) The instructions under review here cite
 
 Untiedt
 
 as authority.
 

 
 *1415
 
 However, in
 
 People
 
 v.
 
 Brian
 
 (1980) 110 Cal.App.3d Supp. 1, 4 [168 Cal.Rptr. 105], the court concluded a violation of section 597, subdivision (b), required criminal negligence. (110 Cal.App.3d at pp. Supp. 3-4.)
 
 Brian
 
 pointed out
 
 (id.
 
 at p. Supp. 4) that a holding to the contrary in
 
 People
 
 v.
 
 Farley
 
 (1973) 33 Cal.App.3d Supp. 1 [109 Cal.Rptr. 59] was premised on an analogy to child-endangerment cases, the reasoning in which had been refuted (citing
 
 People
 
 v.
 
 Peabody
 
 (1975) 46 Cal.App.3d 43, 46 & fn. 1 [119 Cal.Rptr. 780] [section 20 required at least criminal negligence for crimes except for “regulatory offenses,” which do not include child endangerment because of then potential maximum sentence of 10 years]).
 

 We cannot conceive of a credible basis for concluding section 597f is distinguishable from section 597 as interpreted by
 
 Brian,
 
 which considered the proper principles in connection with the necessary mental state. The People assert only that section 597f protects the public health and has a relatively light (six-month) punishment, so it should come within the regulatory-offense exception to section 20. Even if we assume a threat to the well-being of animals is a threat to
 
 public
 
 health or safety with a small penalty, the People ignore additional criteria. As the Supreme Court recently recounted, these regulatory offenses must also not involve “ ‘grave damage to an offender’s reputation’ ” or conduct which is “malum in se.”
 
 (People
 
 v.
 
 Simon
 
 (1995) 9 Cal.4th 493, 519, 520 [37 Cal.Rptr.2d 278, 886 P.2d 1271].) Moreover, any expansion of the category of regulatory offenses is disfavored. (I
 
 d.
 
 at p. 520.) In our society, those who mistreat animals are the deserved object of obloquy, and their conduct is wrongful of itself and not just as a matter of legislative declaration. Consequently, we believe
 
 Untiedt
 
 is wrongly decided and a conviction of section 597f requires proof of criminal negligence. The court’s failure to instruct the jury on this requirement means we must reverse this misdemeanor conviction. (1 Witkin & Epstein, Cal. Criminal Law,
 
 supra,
 
 Elements of Crime, § 113, p. 134.) However, as we do not believe this minor modification would make it reasonably likely that the trial court would restructure the remaining counts differently, there is no need to remand for resentencing.
 

 IV
 

 With respect to each of the counts of a violation of section 597, the information alleged the defendant “did unlawfully cause an animal to be deprived of necessary sustenance and drink, and having charge and custody of an animal, did fail to provide that animal with proper food, drink and
 
 *1416
 
 shelter, and did subject that animal to needless suffering . . . Section 597f provides in pertinent part, “(a) Every owner ... or possessor of any animal, who permits the animal to be . . . without proper care and attention, shall, on conviction, be deemed guilty of a misdemeanor.”
 

 The defendant argues the pleading describes the felony in such a way that, if committed in the manner alleged, the misdemeanor is necessarily committed as well. She therefore contends the trial court erred in failing to instruct sua sponte that the jury could convict her of the misdemeanor as a lesser included offense of each of the felony counts, because there was substantial evidence that the mental element distinguishing the two offenses was absent.
 
 (People
 
 v.
 
 Barton
 
 (1995) 12 Cal.4th 186, 194-195 [47 Cal.Rptr.2d 569, 906 P.2d 531];
 
 People
 
 v.
 
 Moses
 
 (1996) 43 Cal.App.4th 462, 469-470 [50 Cal.Rptr.2d 665].) The People do not address the scienter argument, assume arguendo that the felony allegations necessarily include the misdemeanor offense, and maintain that the evidence at trial presented an all-or-nothing choice for the jury rather than a greater-lesser spectrum of culpability, which absolves the trial court of the duty to instruct sua sponte.
 
 (Barton, supra,
 
 12 Cal.4th at p. 195.)
 

 In
 
 People
 
 v.
 
 Untiedt, supra,
 
 42 Cal.App.3d 550, the court rejected a claim that the phrase “without proper care and attention” in section 597f was unconstitutionally vague. In light of “the clear legislative purpose,” the court construed the statute to prohibit inadequate care that was reasonably likely to result in the infliction of unjustifiable pain or suffering. (42 Cal.App.3d at p. 554.) As the present information alleged inadequate provision of shelter, food, drink, and sustenance (all of which are aspects of care) and the infliction of “needless” suffering (which does not appear to be anything other than a synonym for “unjustified”), the acts alleged as constituting the section 597 felony are identical to the acts which constitute the section 597f misdemeanor.
 

 However, we have just accepted the defendant’s argument that the mental state for the two offenses is also identical. Thus, as in the analogous case of
 
 People
 
 v.
 
 Hill
 
 (1992) 6 Cal.App.4th 33 [8 Cal.Rptr.2d 123] (which involved a
 
 lesser-related
 
 offense), “the misdemeanor . . . offense for which [the defendant] sought instruction was ‘lesser’ only in terms of penalty.”
 
 (Id.
 
 at p. 44.) As a result, regardless of whether the jury credited the version of the facts presented by the prosecution or the defendant, the choice was not between a greater and a lesser offense. “If [the defendant] was guilty of the lesser, on these facts, [she] was also guilty of the greater. Denying the lesser-offense instruction therefore did not offend
 
 [People
 
 v.]
 
 Geiger
 
 [(1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055]]. The
 
 *1417
 
 same rationale applies to lesser
 
 included
 
 offenses . . .
 
 (Id.
 
 at p. 45.) Consequently, the trial court did not violate its duty to instruct sua sponte on lesser included offenses.
 

 V
 

 Subdivision (f) of section 597 provides in pertinent part: “Upon the conviction of a person charged with a violation of this section by causing or permitting an act of cruelty, as defined in Section 599b, all animals lawfully seized and impounded with respect to the violation . . . shall be adjudged by the court to be forfeited and shall thereupon be awarded to the impounding officer for proper disposition. A person convicted of a violation of this section by causing or permitting an act of cruelty, as defined in Section 599b, shall be liable to the impounding officer for all costs of impoundment from the time of seizure to the time of proper disposition.”
 

 The defendant never disputed the NWSPCA’s calculations of its impoundment costs. Instead, she disputes the statutory authorization for the NWSPCA to recover its costs for
 
 all
 
 the impounded animals or to recover any costs after the court transferred custody of the animals seized in July to the NWSPCA. She also makes an unseemly “mitigation of damages” argument that the NWSPCA should have been quicker to put her animals to death rather than continuing to care for them until new owners could be found to care for these physically and mentally maimed animals. We treat these in turn.
 

 A
 

 The defendant’s initial argument claims the second part of the statute is ambiguous about which “costs of impoundment” may be recovered by the impounding officer upon her conviction. She thus argues we must apply the interpretation which most favors her, namely limiting the obligation for reimbursement to the eight animals on which her convictions for felony cruelty specifically rest who died within a month.
 

 The phrase “costs of impoundment” in the second part of the statute refers necessarily to
 
 “all animals
 
 lawfully seized and impounded
 
 with respect to the
 
 violation” (§ 597, subd. (f), italics added) in the first part of the statute. “With respect to” is a general phrase requiring only a logical or causal connection in a general transactional sense with the violation, as opposed to a limited phrase such as “for,” “from,” or “as a result of’ the violation (which would require a direct connection). (Cf.
 
 Moallem
 
 v.
 
 Coldwell Banker Com. Group, Inc.
 
 (1994) 25 Cal.App.4th 1827, 1831 [31 Cal.Rptr.2d 253];
 
 *1418
 

 Xuereb
 
 v.
 
 Marcus & Millichap, Inc.
 
 (1992) 3 Cal.App.4th 1338, 1344 [5 Cal.Rptr.2d 154] [phrases “relate to” or “arising from” contract more general than “on” contract].) The general connection is further reflected in the use of the plural “all animals” (rather than “the animal”), while also using the singular “the violation” (which itself rests on cruelty to the singular “any animal”). Thus, on its face, an impoundment officer may recover costs for animals other than the direct victims of a defendant’s violation of the statute.
 

 Even if “with respect to” could be considered ambiguous, we do not find the language
 
 reasonably
 
 susceptible of the interpretation which the defendant gives it. In the panoply of statutes from section 596 through 599f, the Legislature has manifested an unmistakable intent to prevent cruelty to animals (cf.
 
 People
 
 v.
 
 Untiedt, supra,
 
 42 Cal.App.3d at p. 554) and to provide for the removal of animals from the custody of those not fit to keep them. We thus interpret the present statute as allowing the removal of
 
 all
 
 animals in the keeping of a defendant found to be capable of cruelty, regardless of whether the other animals have been victims of a violation of the statute, as a rational means of ensuring the safety of the other animals. To limit the impoundment power under the statute (as the defendant would interpret it) would have the result of requiring an unwieldy prosecution of a separate count for every animal (much like the initial 70-odd page information in this matter) in order to remove them from abusive conditions. We reject the proffered interpretation.
 

 B
 

 On August 12,1993, the trial court granted the motion of the NWSPCA to deem “abandoned” the animals seized in July 1993 because they “require[d] veterinary care and the humane society . . . [was] not assured . . . that the owner [would] provide the necessary care . . . .” (§ 597.1, subd. (i).) The defendant argues the animals were no longer her property after this point, so she could not be required to reimburse the NWSPCA for the costs of impoundment of these dogs.
 
 [8]
 
 She disregards the express language of section 597, subdivision (f), which subjects her to reimbursement for all impoundment costs from the time of seizure “to the time of proper disposition.” This language is
 
 not
 
 conditioned on her continued ownership interest in the animals. We consequently reject the argument.
 

 C
 

 We quote the defendant’s final argument, which is a reflection of the lack of concern for her animals as living sentient creatures, in its entirety.
 
 *1419
 
 “[F]rom the point that the animals were transferred to the [NW]SPCA, they [sic] certainly had an obligation to dispose of these animals. However, they [sic] kept them at their [sic] offices at a cost ranging from $8,000 to $20,000 per month. They [sic] held these animals for over 20 months, and then submitted a bill to the court asking for reimbursement of $244,000. It was entirely inappropriate for the [NW]SPCA to retain these animals and then ask [the defendant] to reimburse them [sic] for the costs associated with their care.” The defendant does not cite any authority for this assertion of a duty to euthanize to mitigate the repercussion of her cruel behavior. We will not provide any and, accordingly, reject the argument.
 

 Disposition
 

 The conviction for animal neglect (§ 597f) is reversed. The judgment is otherwise affirmed in all respects.
 

 Sims, Acting P. J., and Morrison, J., concurred.
 

 A petition for a rehearing was denied April 24, 1997, and appellant’s petition for review by the Supreme Court was denied July 9, 1997.
 

 [1]
 

 As a violation of a condition of the defendant’s release on her own recognizance, officers seized 57 more dogs on her property in November 1993.
 

 [2]
 

 Several of the new owners of these dogs wrote to the trial court in connection with the defendant’s sentencing, detailing lingering behavioral disorders.
 

 [3]
 

 At least 25 of these dogs found homes.
 

 [4]
 

 Section 597, subdivision (b), provides: “Except as otherwise provided in subdivision (a) or (c), every person who overdrives, overloads, drives when overloaded, overworks, tortures, torments, deprives of necessary sustenance, drink, or shelter, cruelly beats, mutilates, or cruelly kills any animal, or causes or procures any animal to be so overdriven, overloaded, driven when overloaded, overworked, tortured, tormented, deprived of necessary sustenance, drink, shelter, or to be cruelly beaten, mutilated, or cruelly killed; and whoever, having the charge or custody of any animal, either as owner or otherwise, subjects any animal to needless suffering, or inflicts unnecessary cruelty upon the animal, or in any manner abuses any animal, or fails to provide the animal with proper food, drink, or shelter or protection from the weather, or who drives, rides, or otherwise uses the animal when unfit for labor, is, for every such offense, guilty of a crime punishable as a misdemeanor or as a felony or alternatively punishable as a misdemeanor or a felony and by a fine of not more than twenty thousand dollars ($20,000).”
 

 [5]
 

 In a tangentially related argument, the defendant claims this paragraph is “confusing” because it states the acts must be committed in a grossly negligent manner rather than states the acts were the result of gross negligence. We find no distinction between these formulations.
 

 [6]
 

 Section 597f provides in pertinent part: “(a) Every owner, driver, or possessor of any animal, who permits the animal to be in any building, enclosure, lane, street, square, or lot, or any city, city and county, or judicial district, without proper care and attention, shall, on conviction, be deemed guilty of a misdemeanor. . . .”
 

 [7]
 

 Section 20 provides, “In every crime of public offense there must exist a union, or joint operation of act and intent, or
 
 criminal
 
 negligence.” (Italics added.) Criminal negligence requires conduct more egregious than mere civil negligence; a defendant’s dereliction must be
 
 *1415
 
 such a gross departure from the reasonably prudent that it amounts to reckless indifference with actual or imputed knowledge of the consequences. (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, § 113, p. 134.)
 

 [8]
 

 In her reply brief, she first argues that once the prosecution filed the amended information in January 1995 limiting the charges to eight counts of felony animal cruelty, she was not obliged to pay the impoundment costs of any additional animals. We disregard this argument. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 496, p. 484.)