Filed 5/28/15  P. v. King CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JERRY LEE KING,<br><br>        Defendant and Appellant. | C076545<br><br>(Super. Ct. No. 12F08209) |

A jury found defendant Jerry Lee King guilty of first degree murder and found he personally used and intentionally discharged a firearm, causing death.  (Pen. Code, §§ 187, 12022.53, subds. (b), (c), (d).)  The trial court sentenced defendant to prison for 50 years to life and he timely appealed.

On appeal, defendant contends the trial court prejudicially misinstructed the jury regarding self-defense, provocation, and lying in wait.  Disagreeing, we shall affirm.

**BACKGROUND**

On December 9, 2012, defendant fatally shot his uncle, Willis Griffin, with a rifle.

1

The People's theory was that defendant, who lived with his mother in a rural area, had been asked to leave, and his mother enlisted Griffin to help evict him. He had threatened to shoot Griffin the day before, and about a week before the killing threatened to beat Griffin because he thought Griffin was seeing defendant's ex-girlfriend. When Griffin arrived at the residence on the day of the murder, defendant walked 75 feet from the residence towards him and shot him through the heart from 10 feet away. After the killing he had gunshot residue on his hand, hid the gun, and consistently denied shooting Griffin until his trial testimony.

The defense theory was that Griffin--larger than defendant, and a drug-user with a violent past--arrived, asked if defendant was going to shoot him, then charged at defendant, who did not know whether the rifle he held was loaded. Defendant brought the rifle up and fired it accidentally. Defendant lied about the shooting because he was afraid. The People argued defendant's claims of accident or self-defense should be rejected, because they were not raised until trial and also in part argued that defendant lacked credibility because of his three prior felony convictions.

At trial, defendant testified Griffin outweighed him by at least 50 pounds. The day before the killing he overheard his mother talking to Griffin, who said he would get defendant out of the house the next day, which made him feel bad and "tore [him] up inside." The next day defendant argued with his mother as she prepared to leave, and threatened to stab the tires he had bought for her car. He fell asleep, woke up, and heard Griffin's motorcycle. He believed he was going to be kicked out. He armed himself because he was afraid of Griffin, having seen him beat his mother's ex-husband with a baseball bat and "do some pretty mean things" to others. He added about Griffin that "[w]hen he snaps, he snaps." Defendant did not check to see if the rifle was loaded.

Defendant testified that when Griffin stopped his motorcycle, he looked at defendant--who was about 10 feet away, holding the rifle with one arm--and said "what are you going to do, fucking shoot me[?]" As Griffin tried to put the kickstand down, he

2

hit his leg, swore, dismounted from the bike, and started toward defendant. Defendant described Griffin's advance "Like a football tackle. Like he was going to tackle me. Like he started to run at me." Defendant then "pulled the gun up and it just went off." It was an accident. Defendant admitted hiding the gun, and lying to the 911 operator, the police, and the media. He loved his uncle, who had practically raised him. Despite this affection, he brought the rifle "because I thought if I had the gun in my hands that he wouldn't come after me physically. . . . That we could actually just argue this out and then I wouldn't have to leave."

## DISCUSSION

### I

### *Pretextual Self-Defense*

Defendant contends the trial court should not have instructed the jury on the concept of pretextual self-defense. He concedes he did not object to this instruction in the trial court, but contends we should review his claim for various reasons. We elect to address the claim on the merits, and reject the claim of error.

A. *Background*

The trial court gave the pattern CALCRIM instructions on self-defense and imperfect self-defense. These instructions required the jury, before returning a murder verdict, to find that the People had proven beyond a reasonable doubt that defendant had not acted to defend himself, whether defendant's belief in the need to do so was objectively reasonable or not. As to each defense, the jury was instructed to consider defendant's knowledge of Griffin's prior threatening or harmful acts in evaluating defendant's belief. As to regular self-defense, the jury was instructed defendant could stand his ground.

The trial court also gave CALCRIM No. 3472, as follows: "A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force."

3

Defense counsel argued in part that because of Griffin's size, violent past, and his sudden lunge towards defendant, defendant actually believed in the need to employ deadly force to defend himself. During rebuttal, the prosecutor argued, "A person doesn't have the right to self-defense if he provokes the fight or [acts] with an intent to create an excuse to use force. Well, I'm going to go out there with this rifle, when Willis sees it [and] says, what are you going to do, shoot me, then it's going to be okay that I do. That's not the way the law works."

B. *Analysis*

To illustrate the concept of pretextual self-defense, counsel cites an unforgettable scene from *Shane*, where Jack Palance's character--a highly experienced gunfighter--goads Elisha Cook, Jr.'s character--an ordinary "sodbuster"--into reaching for his revolver, whereupon Palance's character shoots him down, having planned the entire scenario to absolve himself of liability, because he did not draw first. But, Hollywood notwithstanding--and regardless of whether the film correctly conveyed the extant law in 19th Century Wyoming--our Supreme Court has held that "[s]elf-defense is not available as a plea to a defendant who has sought a quarrel with the design to force a deadly issue and thus, through his fraud, contrivance, or fault, to create a real or apparent necessity for killing." (*People v. Hecker* (1895) 109 Cal. 451, 462.)

Defendant contends "nothing remotely similar" happened in this case. We disagree. The jury could plausibly find that defendant carried the rifle with him to goad Griffin into making a threatening move. Defendant's own testimony shows that after Griffin saw the gun, he in effect scoffed at it, taunting defendant by asking if he was going to "fucking shoot" Griffin. Then, when Griffin got off the motorcycle, according to defendant, Griffin indeed rushed towards defendant, whereupon, in defendant's version, the rifle discharged as he brought it up defensively. The very fact he greeted his uncle with a rifle in hand could be viewed by the jury as provocation by defendant,

4

because the jury was free to disbelieve defendant's testimony that he held the rifle in order to ensure a *peaceful* dialogue with Griffin.

Accordingly, contrary to defendant's view, substantial evidence supported the instruction, and therefore the trial court did not err in giving it to the jury.

Moreover, the trial court instructed the jury that not all of the instructions were applicable, depending on its findings about the facts of the case. The prosecutor emphasized the trial court's instruction that not all instructions would necessarily apply. We presume the jury would follow the instructions and disregard the pretextual self-defense instruction if it did not find the facts supported it. (See *People v. Sanchez* (2001) 26 Cal.4th 834, 852.) It did not, as defendant contends, impair the other self-defense instructions, which required the People to disprove both the perfect and imperfect self-defense theories. (See *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1381 [construing similar instruction, but rejecting claim that it "might have kept the jury from evaluating [the] self-defense claim"].) This instruction did not negate or weaken those instructions, nor did the prosecutor's argument.

## II

### *Provocation*

Defendant contends the trial court improperly failed to instruct on provocation as it pertained to premeditation and deliberation, again proffering various reasons why the lack of an objection in the trial court should be excused. We decline to excuse the failure to object and find the claim forfeited.

The trial court gave a voluntary manslaughter instruction (CALCRIM No. 570), premised on a sudden quarrel or heat of passion. The instruction defined provocation and required the People to prove beyond a reasonable doubt that defendant did not kill in the heat of passion, and if they did not, the jury was instructed to find defendant not guilty of murder. However, the jury was *not* instructed that provocation could also lessen a

5

murder from first degree murder to second degree murder, by negating premeditation or deliberation or both.  (See, e.g., CALCRIM No. 522.)

As for provocation and heat of passion, the prosecutor argued defendant provoked Griffin, who was merely walking up the driveway with his motorcycle.  Defendant's act of grabbing the rifle and confronting Griffin was not an objectively reasonable response to anything Griffin did.  Defense counsel argued defendant became afraid when Griffin lunged at him suddenly, which qualified as a sudden quarrel for purposes of provocation.

CALCRIM No. 522 or similar instructions on provocation as it may bear on the questions of premeditation and deliberation are not *necessary* to the jury's understanding of the applicable law; such instructions merely "pinpoint" one fact--provocation--that may be emphasized by the defense to parry the prosecution's evidence about a defendant's intent, specifically, the mental states of premeditation and deliberation. Accordingly, such instruction must be requested by the defense in the trial court.  (See *People v. Rogers* (2006) 39 Cal.4th 826, 877-880 [addressing CALJIC No. 8.73]; *People v. Middleton* (1997) 52 Cal.App.4th 19, 28-33, disapproved on another point by *People v. Gonzalez* (2003) 31 Cal.4th 745, 752-753, fn. 3.)  Defendant cites no authority supporting his proposition that if *some* provocation instructions are given, *all* provocation instructions must be given.  As we have just described, precedent holds that not all such instructions are necessary for the jury to understand the case.

Defendant points to an appellate decision holding such instruction is a pinpoint instruction, *People v. Lee* (1994) 28 Cal.App.4th 1724, at pages 1732 to 1734, and urges us not to follow it.  But the opening brief does not address the holding of *People v. Rogers*, *supra*, 39 Cal.4th 826, and we may not depart from Supreme Court precedent. (See *Auto Equity Sales, Inc*. *v. Superior Court* (1962) 57 Cal.2d 450, 455.)

In the reply brief, defendant notes that *Rogers* and other cases interpreted CALJIC No. 8.73, not CALCRIM No. 552.  We see no material difference.  Although CALCRIM No. 552 addresses both murder and manslaughter and the different degrees of murder,

6

whereas CALJIC No. 8.73 addresses only the latter, in this case, the jury was instructed on the former via CALCRIM No. 570. The only principle of law it did not receive instruction on was that provocation can affect the degree of murder, by negating premeditation or deliberation, a pinpoint instruction that was not requested by the defense in the trial court as required.

Nor, on this record, can defendant bypass this procedural hurdle by invoking ineffectiveness of trial counsel. Defendant's trial counsel largely emphasized the *accident* defense supported by defendant's testimony. That was a rational tactical reason for not quibbling about provocation. (See *People v. Dennis* (1998) 17 Cal.4th 468, 527 ["defense counsel reasonably could decide to forgo the [pinpoint] instruction for tactical reasons"].)

### III

### *Lying in Wait*

Defendant contends no substantial evidence supported a lying-in-wait instruction and that the instruction that was given was incomplete. We disagree.

The jury was instructed on premeditated murder and lying-in-wait murder, and the People argued the evidence supported each theory. The prosecutor's argument about lying in wait made the point that it was the equivalent of premeditation and deliberation. She emphasized that defendant had threatened to shoot Griffin the day before, but needed to wait for a better opportunity, presumably when his mother was absent. When Griffin arrived the next day, after defendant's mother had left, defendant took the opportunity to approach him with a rifle and take him unawares. Defense counsel argued there was no lying in wait, or ambush, because defendant openly walked 75 feet from the residence towards Griffin and shot him from 10 feet away.

A. *Sufficiency of the Evidence*

Defendant first contends that the record does not support a murder under a lying-in-wait theory, because defendant did not shoot from cover. No such requirement inheres

in the lying-in-wait doctrine. Instead, as the jury was instructed, "A person can conceal his or her purpose even if the person killed is aware of the person's physical presence." Indeed, defendant concedes that a traditional ambush is not required, and that acting insidiously qualifies, pursuant to Supreme Court authority (see *People v. Stevens* (2007) 41 Cal.4th 182, 202 [lying-in-wait special circumstance]), as does an attack performed "in a purposeful manner that required stealth and maneuvering to gain a position of advantage over the" victim (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1074).

Although many cases cited by defendant to illustrate lying-in-wait murder involve ambush from cover or attacks on sleeping victims, these cases do not limit the ambit of lying-in-wait murder. The jury could find that defendant surprised his uncle by shooting him as Griffin approached defendant to talk, unaware that defendant intended to shoot him at close range instead of having a civil discussion. The fact that defendant was armed would not necessarily alert Griffin to any danger, as even defendant claimed great affection for his uncle. The jury could well find that defendant managed to get within easily lethal range by concealing his murderous purpose.

B. *Instructional Claim*

Defendant claims the pattern first degree murder instruction, CALCRIM No. 521, does not require the jury to find that the act of lying-in-wait is the *means* of the killing. He posits we are likely to reject the claim based on precedent, but seeks to preserve it for review in the Supreme Court.

The pattern instruction as given in this case provided in relevant part:

> "The defendant is guilty of first degree murder if the People have proved that the defendant murdered while lying in wait or immediately thereafter. The defendant murdered by lying in wait if:

> "1. He concealed his purpose from the person killed;

> "2  He waited and watched for an opportunity to act;

8

"AND

"3. Then, from a position of advantage, he intended to and did make a surprise attack on the person killed.

"The lying in wait does not need to continue for any particular period of time, but its duration must be substantial enough to show a state of mind equivalent to deliberation or premeditation.

"A person can conceal his or her purpose even if the person killed is aware of the person's physical presence."

As indicated by the penultimate paragraph just quoted, a lying-in-wait finding equates to a finding of deliberation or premeditation, as the prosecutor argued.

Defendant focuses on the first quoted sentence, to the effect the "the defendant murdered *while* lying in wait or immediately thereafter." (Italics added.) He contends the word "while" removes any necessary *causal* connection between his actions and the killing and supplants it with a purely *temporal* one.

"In reviewing claims of instructional error, we look to whether the defendant has shown a reasonable likelihood that the jury, considering the instruction complained of in the context of the instructions as a whole and not in isolation, understood that instruction in a manner that violated his constitutional rights. [Citations.] We interpret the instructions so as to support the judgment if they are reasonably susceptible to such interpretation, and we presume jurors can understand and correlate all instructions given." (*People v. Vang* (2009) 171 Cal.App.4th 1120, 1129; cf. *People v. Speegle* (1997) 53 Cal.App.4th 1405, 1413 [noting counsel was "[e]ngaging in the proscribed hypertechnical parsing of instructions [citations] rather than determining the reasonably likely interpretation given them by reasonable jurors"].)

Although the beginning of the instruction refers to a killing "while" lying in wait or immediately thereafter, the instruction then lists three elements that must be proven beyond a reasonable doubt to establish such a killing: that the defendant (1) "concealed

9

his purpose," (2) "waited and watched for an opportunity to act," *and* (3) "from a position of advantage . . . intended to and did make a surprise attack on the person killed."

We agree with the People that these elements in combination, and in particular the third element, require that the act of lying in wait must be the mechanism by which the killing is achieved, that is, it must *cause* the killing. The defendant must intend to and "*make a surprise attack* on the person killed." (Italics added.) This requires that the defendant's actions of concealment of person or purpose or both affect the killing. The instruction does not permit a jury to find a lying-in-wait murder simply because a defendant concealed himself or his purpose at some point prior to or during the commission of the killing. Thus a mere temporal connection between the defendant's actions and the killing will not suffice to prove lying in wait under the pattern instruction.

## DISPOSITION

The judgment is affirmed.


        DUARTE        , J.


We concur:


      RAYE        , P. J.


      HOCH        , J.