Filed 8/6/24  P. v. Cervantez CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
| --- | --- |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RENE RAY CERVANTEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B327570<br>(Super. Ct. No. 2020008715)<br>(Ventura County)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on July 19, 2024, be modified as follows:

The paragraph commencing at the bottom of page 11 titled "DISPOSITION" and continuing on page 12, is deleted and the following is inserted in its place:

## DISPOSITION

Appellant's convictions on counts 9 and 10 are reversed.  On remand, the People may retry those counts.  If the People elect not to retry counts 9 and 10,

the trial court shall resentence Cervantez consistent with this opinion.  The clerk shall prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

There is no change in judgment.
Appellant's petition for rehearing is denied.

GILBERT, P. J.　　　　　YEGAN, J.　　　　　BALTODANO, J.

Filed 7/19/24  P. v. Cervantez CA2/6 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RENE RAY CERVANTEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B327570<br>(Super. Ct. No. 2020008715)<br>(Ventura County) |

Rene Ray Cervantez[1] appeals from the judgment after a jury convicted him of several counts of possessing narcotics for sale, possessing ammunition and firearms as a convicted felon, and two counts of cruelty to animals.  The trial court sentenced him to 15 years in state prison.  Cervantez contends the trial court erred when it did not instruct the jury regarding criminal negligence for the animal cruelty counts (Pen. Code, § 597, subd. (b)).  He also contends the trial court erred when it denied his

_____

[1] Appellant's last name is spelled "Cervantes" in the abstract of judgment and in some other parts of the record.

motion to dismiss the prior strike allegation pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).  We reverse the animal cruelty convictions and in all other respects affirm.

FACTUAL AND PROCEDURAL HISTORY

In 2020, Cervantez sold an undercover informant 0.96 grams of heroin through a window at Cervantez's house.  Two days later, detectives searched the house and found 16.43 grams of heroin, scales, baggies, and $1,100 in cash.  A loaded handgun was near the drugs even though Cervantez was prohibited from possessing firearms or ammunition.  More ammunition was under the driver's seat of his car.

Police searched Cervantez's house again in 2021.  In a locked safe were 18.19 grams of fentanyl.  Nearby were four digital scales and $1,800 in cash.[2]

Cervantez shared the home with his wife and children.  He used a walker and a shower chair, and had difficulty walking from one room to another.  His wife, R.C., was his caregiver.  She bathed and dressed him and walked him inside the house.

During the 2021 search, officers saw two dogs—a husky and a pit bull—in the backyard.  The dogs were "very thin" with their ribcages and spines showing.  Their skin was hanging loose and they had no muscle tone.  They were also covered in fleas, and the pit bull had a rash on her stomach and scars on her body.  The dogs appeared to be suffering.

Officers did not see a doghouse or dog beds.  No bowls for food or water were in the yard, and officers could not find one in

---

[2] The 2020 violations were originally charged in case 2020008715, and the 2021 violations in case 2021025223.  The cases were consolidated for trial.

the house.  An officer gave the dogs a crock pot with water, and they ran to it and drank as much as they could.  When officers found dog food, the dogs ran to it and ate it quickly.  Both dogs immediately vomited and ate their vomit, then repeated the process several times.

A veterinarian described the dogs as dirty, dehydrated, and emaciated.  The pit bull had muscle wasting (atrophy), which can be caused by chronic malnutrition.  She also had hair loss caused by the flea infestation.  The dogs were not "picky eaters" at the shelter but gained weight.[3]

Cervantez's brother, A.V., testified the dogs "belonged to" Cervantez and were "outside dogs."  A.V. cared for the dogs when Cervantez was previously hospitalized.  A.V. had difficulty getting the dogs to eat.  During A.V.'s care, the husky was thin with ribs showing.  The pit bull had some ribs showing but looked worse after he returned the dogs to Cervantez.

R.C. testified she was responsible for taking care of the dogs in September 2021.  She fed them dry dog food every morning and gave them water in plastic bowls.  She checked their food and water throughout the day.  She also bathed the dogs once or twice a month using a shampoo "for people" and believed "[y]ou can use it for the dog, too."  R.C. also said that "at times there was a little shack in the backyard," and they put cushions in it for the dogs to lie on when it rained.  She testified the dogs were happy and did not see fleas on them.

R.C. testified that Cervantez previously fed the dogs expensive wet food.  But after Cervantez was in an accident, they

---

[3] Six weeks after being removed from Cervantez's home, the husky died of an infection.  There was no testimony that Cervantez's conduct contributed to the infection.

could only afford dry food the dogs didn't like.  They wouldn't eat consistently because they were "picky eaters."

The jury found Cervantez guilty of possession of heroin and fentanyl for sale (Health & Saf. Code, § 11351, counts 1 and 8), possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a), count 2), felon in possession of ammunition (Pen. Code, § 30305, subd. (a)(1), counts 4 and 6), felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1), count 5), sale of heroin (Health & Saf. Code, § 11352, subd. (a), count 7), and cruelty to animals (Pen. Code, § 597, subd. (b), counts 9 and 10).  The jury also found true an allegation that Cervantez was armed with a firearm in the commission of count 1 (Pen. Code, § 12022, subd. (c)).  He admitted he had suffered a prior strike conviction (Pen. Code, §§ 667, subds. (c)(1), (e)(1), 1170.12, subds. (a)(1), (c)(1)), and that he committed the offenses while released on bail (Pen. Code, § 12022.1, subd. (b)).

The court sentenced Cervantez to 15 years in state prison, consisting of consecutive sentences of: six years for count 1 (midterm of three years, doubled for strike); low term of three years for the firearm enhancement for count 1; two years, eight months for count 7 (one-third of midterm of four years, doubled for strike); two years for count 8 (one-third of mid-term of three years, doubled for strike); and one year, four months for count 10 (one-third of midterm of two years, doubled for strike).  The court imposed concurrent sentences for counts 4 and 9, and stayed sentences pursuant to Penal Code section 654 for counts 2, 5, and 6.  The court dismissed the on-bail allegations pursuant to Penal

4

Code section 1385.[4]

DISCUSSION

*Jury instructions*

Cervantez contends the jury instruction for animal cruelty was inadequate because it did not include the requirement of criminal negligence.  We agree.

Trial courts have a sua sponte duty to advise the jury of every element of the charged offenses.  (*People v. Mil* (2012) 53 Cal.4th 400, 409.)  We "review independently the legal adequacy of a jury instruction."  (*People v. Cole* (2004) 33 Cal.4th 1158, 1211.)

Here, the prosecution charged Cervantez with violating Penal Code section 597, subdivision (b), by "unlawfully depriv[ing] food, water, shelter and care to the . . . dog[s]."  But the court instructed the jury with a modified version of CALCRIM No. 2953, the instruction for a violation of Penal Code section 597, subdivision (a):

"The defendant is charged in Counts 9 and 10 with cruelty to animals in violation of Penal Code section 597(b).

"To prove that the defendant is guilty of this crime, the People must prove that:

"1.    The defendant had the charge or custody, either as an owner or otherwise, of a living animal;

"AND

"2.    The animal was either:

"a) subjected to needless suffering;

"b) subjected to un-necessary [sic] cruelty; or

---

[4] The court also imposed a consecutive sentence of one year, four months for a violation of Health and Safety Code section 11378 in case 2017011288.

5

"c) not provided with proper food, drink, shelter, or protection from the weather.

"You all must unanimously agree on at least one of the options listed in element 2."

The court erred in giving this instruction because it omits the mens rea requirement for cruelty to animals necessary to convict pursuant to Penal Code section 597, subdivision (b): that the defendant acted or failed to act with criminal negligence. (*People v. Tom* (2018) 22 Cal.App.5th 250, 256; *People v. Speegle* (1997) 53 Cal.App.4th 1405, 1413 (*Speegle*).) *Speegle* held the mental state for failure of a person with custody of an animal to provide proper food, drink, or shelter (Pen. Code, § 597, subd. (b)) was the same as an animal's owner or possessor permitting it to be without proper care and attention (Pen. Code, former § 597f)— both require criminal negligence. (*Speegle*, at pp. 1412-1416.) The court reasoned that mistreatment of animals is not a regulatory offense for which ordinary negligence would suffice. (*Id*. at p. 1415.) Instead, criminal negligence is required because "those who mistreat animals are the deserved object of obloquy, and their conduct is wrongful of itself and not just as a matter of legislative declaration." (*Ibid*.)

*Speegle* was followed in *People v. Brunette* (2011) 194 Cal.App.4th 268, 284 (*Brunette*), which held that "criminal negligence is the minimum, i.e., least culpable mental state for convictions under subdivision (b) of section 597."

"Criminal negligence" is synonymous with "gross negligence," and requires an act that " 'would cause a high degree of risk of death or great bodily harm.' " (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1140-1141; *Brunette, supra*, 194 Cal.App.4th at p. 285.) " ' "[T]he conduct of the accused must be

6

such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for . . . life.' " " (*Mehserle*, at p. 1140; *Brunette*, at p. 285.)

Contrary to the Attorney General's contention, the court's instruction's references to "needless" suffering, "unnecessary" cruelty, and "proper" food, drink, or shelter did not incorporate the requirement of criminal negligence. "[T]he terms 'necessary,' 'needless,' and 'proper' all give fair notice of an *objective standard of reasonableness* in the provision of sustenance, drink, and shelter, and in the avoidance of infliction of suffering." (*Speegle, supra*, 53 Cal.App.4th at p. 1411, italics added.) But more is required. The prosecution must *also* prove the required mental state of criminal negligence. (See *Brunette, supra*, 194 Cal.App.4th at p. 284; see also *Speegle*, at pp. 1412-1413 [approving instruction requiring an "act or omission inherently dangerous to animal life or safety" committed "in a grossly negligent manner"].) Ordinary negligence does not establish the "high degree of risk of death or great bodily harm" required for criminal negligence. (*People v. Mehserle, supra*, 206 Cal.App.4th at p. 1141.)

In *People v. Brian* (1980) 110 Cal.App.3d Supp. 1, 3, the defendant arranged for others to care for her animals when she left town, but they stopped doing so. The appellate department concluded the instruction on ordinary negligence was inadequate and reversed the conviction. (*Id*. at Supp. 5 & fn. 3.) "Penal Code section 597, subdivision (b) is not a strict liability offense." (*Id*. at Supp. 5.) Similarly here, there was evidence Cervantez owned the dogs, but his wife testified she was responsible for their care.

The Attorney General quotes from CALCRIM No. 592,

7

which includes a definition of "gross negligence." But the trial court did not give this instruction. Instead, the jury was instructed that the animal cruelty counts "require general criminal intent." The jury was told Cervantez "must not only commit the prohibited act, but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law." (CALCRIM No. 252, modified.) This instruction was inadequate because it did not incorporate the requirement that Cervantez harbored criminal negligence or a disregard for life.

" 'A crime is characterized as a "general intent" crime when the required mental state entails only an intent to do the act that causes the harm; a crime is characterized as a "specific intent" crime when the required mental state entails an intent to cause the resulting harm.' " (*People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1172-1173.) "Criminal negligence is a separate mental state that is distinct from either general or specific intent." (*Id.* at p. 1173.) "Accordingly, when the prosecution is charging a crime of criminal negligence, the trial court should instruct the jury on the union between the act and a defendant's criminal negligence." (*Ibid.*) The trial court here erred in not doing so.

*Harmless error*

We assess the prejudicial effect of the trial court's failure to instruct the jury on the required element of criminal negligence pursuant to the harmless error test of *Chapman v. California* (1967) 386 U.S. 18, 24. (*People v. Mil*, *supra*, 53 Cal.4th at p. 409.) We must reverse unless "it appears beyond a reasonable doubt that the error did not contribute to the jury's verdict." (*Id.* at p. 417.) "[I]nstructional error is harmless 'where a reviewing

8

court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence,' " but not where " 'the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' " (*Ibid.*)

The condition of the dogs was deplorable. But the evidence of Cervantez's criminal negligence was neither uncontested nor overwhelming beyond a reasonable doubt. Cervantez's brother testified he had difficulty getting the dogs to eat. There was evidence the dogs "belonged to" Cervantez, but his wife, R.C., testified she had the responsibility for their care. She fed and watered the dogs daily, bathed them, and did not see fleas on them. She testified she fed them dry food because they could not afford wet food. If properly instructed, the jury could have rationally determined that offering the wrong kind of food or failing to eradicate the fleas did not constitute criminal negligence.

There was also evidence Cervantez had health problems that limited his ability to walk or stand. Jurors could reasonably conclude that these problems limited his ability to care for the dogs or supervise their care. Even if the jurors believed *R.C.* was grossly negligent, they could have rationally concluded that Cervantez's reliance on his wife to care for the dogs was not "such a departure from . . . an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for . . . life." (*Brunette, supra,* 194 Cal.App.4th at p. 285.) Accordingly, we reverse the convictions for counts 9 and 10.

Romero *motion*

A trial court has the discretion to dismiss a prior violent or

9

serious felony conviction pursuant to the Three Strikes Law. (*Romero*, *supra*, 13 Cal.4th at p. 504.) We review the trial court's denial of a *Romero* motion for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.) Dismissal is warranted if "in light of the nature and circumstances of [the] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) These factors did not require dismissal of the strike here.

The prior strike offense was a robbery committed in 2010. Cervantez stole power tools from a home improvement store, left through an emergency exit, and struggled with the loss prevention officer. In the same case, Cervantez was convicted of felony burglary and misdemeanor shoplifting based on his theft of thousands of dollars of merchandise from a sporting goods store and an electronics store.

In a *Romero* motion, the court may consider the age of the prior offenses. (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1141.) Cervantez's adult record before his 2011 strike included narcotics offenses, grand thefts, resisting arrest, and violations of probation. After the strike, Cervantez was convicted in 2012 of shoplifting and he failed to successfully complete probation in 2016 based on three probation violations. And Cervantez was later convicted of a 2017 violation of possessing controlled substances for sale. He was on bail in that case when he committed the current offenses.

In our view, the remoteness of the 2011 strike was an

10

insufficient basis to dismiss the strike because Cervantez did not have "a crime-free cleansing period of rehabilitation." (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813 [reversing dismissal of 20-year-old strike]; *People v. Pearson* (2008) 165 Cal.App.4th 740, 749-750 [strikes 24, 15, and 10 years old properly imposed].)

At the hearing on the *Romero* motion, Cervantez contended he was first given heroin at the age of 11, witnessed a fatal shooting at 15, and was stabbed in the back at 19. He completed a substance abuse course while in custody. Although the trial court considered Cervantez's drug addiction, dismissal of the strike was not warranted given his criminal history and current convictions for selling narcotics and being a felon in possession of ammunition and firearms at his home with children living there. (See *People v. Williams*, *supra*, 17 Cal.4th at p. 163 [error to dismiss strike, defendant "did not follow through in efforts to bring his substance abuse problem under control"].)

*People v. Avila, supra*, 57 Cal.App.5th 1134, relied upon by Cervantez, does not compel a different result. The defendant there committed his prior strike offenses 26 to 28 years earlier when he was under the age of 21, and he committed only minor offenses in the seven years before the current offenses. (*Id.* at pp. 1141, 1143.) That is not the case here. "[T]here is simply nothing mitigating" about the age of the prior strike. (*People v. Humphrey*, *supra*, 58 Cal.App.4th at p. 813.) There was no abuse of discretion.

## DISPOSITION

Appellant's convictions on counts 9 and 10 are reversed, and the sentences attributable to those counts are stricken. The clerk shall prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation. In

11

all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:



GILBERT, P.J.



YEGAN, J.

12

Nancy L. Ayers, Judge

Superior Court County of Ventura

_____

Olivia Meme, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.