Filed 9/3/21  P. v. Bean CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C092379 |
| Plaintiff and Respondent, | (Super. Ct. No. 58725) |
| v. | |
| ANTHONY BEAN, | |
| Defendant and Appellant. | |

While defendant Anthony Bean was serving a life sentence for killing Beth Schatz during a home invasion robbery and burglary (*People v. Bean* (1988) 46 Cal.3d 919, 928 (*Bean*)), the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015, §§ 1-4), which amended the law governing murder liability under felony murder and natural and probable consequences theories and provided a new procedure under Penal Code[1] section 1170.95 for eligible defendants to petition for recall and resentencing.

---

[1]     Further undesignated statutory references are to the Penal Code.

Defendant appeals from the trial court's order denying his petition for resentencing under section 1170.95.  He contends he was entitled to be personally present when the court ruled that he failed to establish a prima facie showing that he was entitled to relief under the statute.  Had he been present, defendant asserts he could have testified to new or additional evidence to show he was eligible for resentencing, and his absence at this crucial phase affected his substantial rights.  We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying defendant's crimes,[2] as recounted in the Supreme Court decision affirming his convictions and judgment in *Bean*, were as follows:

Beth Schatz was killed by a person or persons who entered the mobile home she shared with her husband, George Schatz, early one morning in June 1980.  (*Bean*, *supra*, 46 Cal.3d at p. 929.)  George was awakened by a disturbance and saw two young men in the bedroom.  (*Ibid.*)  George was ordered to lie down, and he complied; he noticed his wife was no longer in their bed.  (*Ibid.*)  George either fell asleep or was rendered unconscious.  (*Ibid.*)  When he awoke or regained consciousness, he found his wife lying on the floor near the foot of the bed; she was dead from multiple blows to the head.  (*Id.* at pp. 929-930.)  After calling police, George realized he too had sustained multiple head, neck, and face wounds.  (*Ibid.*)  The injuries suffered by both victims were consistent with blows from a ball-peen hammer.  (*Id.* at p. 930.)

Several items of property, including a television set, a 30.06 deer rifle, a shotgun, George's wallet, a money clip, and a jewelry box were missing from the home.  (*Bean*,

---

[2]    Defendant was also tried and convicted of another home invasion murder, robbery, and burglary against Eileen Fox, but in a subsequent habeas corpus proceeding, the Ninth Circuit found that the Fox incident had been improperly joined for trial with the Schatz crimes (*Bean v. Calderon* (9th Cir. 1998) 163 F.3d 1073); we do not recount the facts of the Fox crimes here.

*supra*, 46 Cal.3d at p. 930.)  The couple's Oldsmobile Cutlass car was also missing. (*Ibid.*)

Shoeprints found in a flower bed underneath the kitchen window bore a " 'strong indication' that they had been made by shoes owned and shared by defendant and his brother." (*Bean*, *supra*, 46 Cal.3d at p. 930.)  A fingerprint found on a screen that had been removed from the home as well as a palm print on the edge of the kitchen counter belonged to defendant.  (*Ibid.*)

A security guard at a nearby business observed a car that may have been an Oldsmobile Cutlass drive by at a high rate of speed around 1:30 a.m. the night Beth was killed.  (*Bean*, *supra*, 46 Cal.3d at p. 930.)  The car skidded in front of a passing highway patrol car that did not stop to ticket it.  (*Ibid.*)

Defendant and Michael Hamilton arrived at a friend's apartment in an area known as the Gardens around 4:30 a.m. the night of the homicide.  (*Bean*, *supra*, 46 Cal.3d at p. 930.)  Defendant told his friend that he had killed a woman and later stated that he did not know if "that bitch" was dead or not; he told another person present at the apartment that he had beaten the woman, stolen a TV and a 30.06 rifle that he planned to sell, that he had driven from the " 'trailer court,' " and that as he did so a highway patrol car came " 'flying by.' " (*Id.* at pp. 930-931.)  Hamilton said little during the conversation other than he had done nothing.  (*Id.* at p. 931.)

The Schatz's Oldsmobile Cutlass was later found abandoned in a field in the Gardens area.  (*Bean*, *supra*, 46 Cal.3d at p. 931.)  A ball-peen hammer, on the head of which was found blood of a type matching that of George, was found on the car's floorboard near the passenger seat.  (*Ibid.*)

Defendant testified that he had been at the Schatz's mobile home park the day before the murder and that he had pried open the screen over their kitchen window and leaned inside to see if he could steal anything.  (*Bean*, *supra*, 46 Cal.3d at p. 931.)  He offered an alibi for the time of Beth's murder.  (*Ibid.*)

3

The jury found defendant guilty of the first degree murder of Beth (§ 187), the robbery of George and Beth (§ 211), first and second degree burglary of the Schatz's mobile home (§ 459), and assault with a deadly weapon upon George (§ 245, subd. (a).) (*Bean*, *supra*, 46 Cal.3d at p. 928.) The jury also found that defendant personally used a deadly and dangerous weapon during the murder of Beth (§ 12022, subd. (b)) and inflicted great bodily injury on George (§ 12022.7). (*Bean*, *supra*, 46 Cal.3d at p. 928.) Special-circumstance allegations that defendant committed the murder during the commission or attempted commission of a robbery (§ 190.2, subd. (a)(17)(i)) and burglary (§ 190.2, subd. (a)(17)(vii)) and that defendant had committed multiple murders (§ 190.2, subd. (a)(3)) were also found true. (*Bean*, *supra*, 46 Cal.3d at p. 928.) He was sentenced to death (*ibid.*), which was later reduced to life without the possibility of parole (*Bean v. Calderon*, *supra*, 163 F 3d at p. 1073; *People v. Bean* (Dec. 14, 2004, C044587) [nonpub. opn.]).

In December 2019, defendant filed a pro. per. petition for resentencing under section 1170.95. Defendant checked various boxes on a form petition alleging that a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; that at trial he was convicted of first degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine; and that he could not now be convicted of first degree murder because of changes made to section 188 and section 189, effective January 1, 2019.

Defendant's form petition also checked a box alleging that he was convicted of first degree murder and that he could not now be convicted of murder given changes to section 189, effective January 1, 2019, because he was not the actual killer. Defendant did not check the box that stated he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree. Defendant's form petition also did not include any box related to not

4

being a major participant or not acting with reckless indifference to human life. He requested that counsel be appointed to represent him on the petition.

On January 15, 2020, pursuant to a Sacramento County Superior Court standing order, the court appointed the conflict criminal defender to represent defendant.

Two weeks later, the People filed a motion to dismiss the petition, arguing Senate Bill No. 1437 was unconstitutional, and that defendant had failed to make a prima facie showing that he was eligible for resentencing under section 1170.95. Defendant's appointed counsel opposed the motion to dismiss, arguing defendant had satisfied the relatively low prima facie burden for relief under the statute, and that Senate Bill No. 1437 was constitutional.

In a May 2020 order signed by the presiding judge, the trial court, on its own motion, set the matter for a hearing in July 2020. The order stated: "This order is not to be construed as a decision on the merits. The defendant is not to be transferred from state prison to county jail and shall not be produced for future hearings unless expressly so ordered by this Court."

Two weeks before the scheduled hearing, a different judge canceled the hearing and ruled in a written order that defendant was not eligible for relief under section 1170.95. In so ruling, the court found, based on the facts as recounted in the Supreme Court opinion affirming defendant's convictions, that defendant was the actual killer and that the jury found he personally used a deadly and dangerous weapon during the commission of the murder. Defendant timely appealed.

DISCUSSION

I

*Legal Background*

Senate Bill No. 1437 was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent

5

to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The bill amended section 188, which defines malice, and section 189, which defines the degrees of murder to address felony murder liability. (Stats. 2018, ch. 1015, § 2-3.) It also added new section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in the law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, § 4.)

Senate Bill No. 1437 redefined malice under section 188 to require that a principal acted with malice aforethought. Now, section 188, subdivision (a)(3) provides in relevant part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."

Section 189 was amended to include new subdivision (e), which provides: "(e) A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer[;] [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree[; or] [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 15, § 3.)

Newly enacted section 1170.95, subdivision (a), allows those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or

6

murder under the natural and probable consequences doctrine.  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial . . . .  [¶]  (3)  The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019."

Our Supreme Court recently clarified that section 1170.95, subdivision (c) requires only a single prima facie showing and entitles the petitioner to the appointment of counsel upon the filing of a facially sufficient petition.  (*People v. Lewis* (2021) 11 Cal.5th 952.)[3]  Once the court has appointed counsel and received briefing from the parties, it may rely on the record of conviction in determining whether that single prima facie showing has been made.  (*Id.* at p. 971.)  The record of conviction includes a prior appellate court opinion, although such an opinion may not supply all necessary answers.  (*Id.* at p. 972.)

"While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited."  (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' "  (*Id.* at p. 972; *People v. Drayton* (2020) 47 Cal.App.5th 965, 980.)

"Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations

---

[3]    The parties originally agreed that there were two prima facie showings required under section 1170.95, subdivision (c), but the Supreme Court's decision in *Lewis* rejected that interpretation of the statute.  (*People v. Lewis*, *supra*, 11 Cal.5th at pp. 957-958.)

7

were proved.  If so, the court must issue an order to show cause." ' "  (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971; *People v. Drayton*, *supra*, 47 Cal.App.5th at p. 978.)  Once the trial court issues an order to show cause, it must then conduct a hearing pursuant to the procedures and burden of proof set out in section 1170.95, subdivision (d) unless the parties waive the hearing or the petitioner's entitlement to relief is established as a matter of law by the record.  (§ 1170.95, subd. (d)(2); *Drayton*, at pp. 980-981.)

Although a court should not reject a petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971), the court need not credit factual assertions that are untrue as a matter of law (*People v. Drayton*, *supra*, 47 Cal.App.5th at p. 980).  Thus, " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' "  (*Lewis*, at p. 971; *Drayton*, at p. 979.)

II

*Right Of Personal Presence*

Defendant contends he had a constitutional right to be present when the trial court determined whether he had made a prima facie showing under section 1170.95, subdivision (c) so as to warrant an order to show cause and an evidentiary hearing.  Summarily denying the petition in his absence, he argues, violated his constitutional rights to be present at a critical stage of the criminal proceeding.  We are not persuaded.

Broadly stated, a criminal defendant has a right to be personally present at certain pretrial proceedings and at trial under various provisions of law, including the confrontation clause of the Sixth Amendment to the United States Constitution, the due process clause of the Fourteenth Amendment to the United States Constitution, and section 15 of article I of the California Constitution.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1230 .)  More specifically, a defendant has a "constitutional right to be present at all critical stages of the criminal prosecution, i.e., 'all stages of the trial where his absence

8

might frustrate the fairness of the proceedings' [citation], or 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.' " (*People v. Rodriguez* (1998) 17 Cal.4th 253, 260.)

Sentencing is considered to be one such critical stage where a defendant has a right to be present. (*People v. Doolin* (2009) 45 Cal.4th 390, 453.) And, because the trial court has discretion to reconsider the entire sentence on remand, resentencing is another critical stage. (*People v. Simms* (2018) 23 Cal.App.5th 987, 996 [defendant's right to be personally present "extends to sentencing and resentencing proceedings"]; see *People v. Rouse* (2016) 245 Cal.App.4th 292, 300 [where court is expected to exercise its sentencing discretion and restructure the entire sentencing package, the proceeding is properly characterized as a critical stage].)

Our Supreme Court has recognized, however, that the right to be present is not without limits. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1039.) For example, " '[u]nder the Sixth Amendment's confrontation clause, a criminal defendant does not have a right to be personally present at a particular proceeding unless his appearance is necessary to prevent "interference with [his] opportunity for effective cross-examination." ' " (*Ibid.*) Under the Fourteenth Amendment's due process clause, " 'a criminal defendant does not have a right to be personally present at a particular proceeding unless he finds himself at a "stage . . . that is critical to [the] outcome" and "his presence would contribute to the fairness of the procedure." ' " (*Ibid.*) Similarly, under the California Constitution's article I, section 15, a criminal defendant has no right to be personally present either in chambers or at bench discussions outside the jury's presence on questions of law or other matters as to which his presence does not bear a reasonably substantial relation to the fullness of his opportunity to defend against the charge. (*Lewis and Oliver*, at p. 1039.)

Defendant cites no published authority directly addressing whether a petitioner has the right to be present at the prima facie stage of a section 1170.95 proceeding before an

9

order to show cause issues, and we have found none. Nonetheless, given the contours of a defendant's constitutional right to presence as described above, we conclude that defendant did not have a right to be present when the trial court determined, as a matter of law, that he failed to make the requisite prima facie showing under section 1170.95, subdivision (c).

"[A] defendant may ordinarily be excluded from conferences on questions of law, even if those questions are critical to the outcome of the case, because the defendant's presence would not contribute to the fairness of the proceeding." (*People v. Perry* (2006) 38 Cal.4th 302, 312.)

Here, after reviewing the parties' briefs and the record of conviction, including the Supreme Court's prior opinion affirming defendant's convictions, the trial court determined *as a matter of law* that defendant was ineligible for relief under section 1170.95 because *the jury determined he actually killed Beth with a deadly or dangerous weapon.* (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 58 [the defendant was not entitled to relief as a matter of law because record of conviction showed the jury found him guilty of second degree murder while personally and intentionally using a firearm to commit the crime; the jury's implicit determination that the defendant was the actual killer barred him from relief under § 1170.95], review granted Mar. 18, 2020, S260410.) At that point in the subdivision (c) stage of the section 1170.95 petitioning process, defendant had not yet " 'stated facts sufficient to satisfy the court that a hearing [wa]s required,' but merely endeavor[ed] to do so." (Cf. *People v. Lewis*, *supra*, 11 Cal.5th at p. 973 [noting a petitioner is not constitutionally entitled to counsel at the outset of the prima facie review process under § 1170.95, subd. (c)].) Defendant had no constitutional right to be present at this stage of the prima facie review because it was neither a criminal trial nor a plenary resentencing, but rather a legal determination under

10

a statute that was an act of lenity from the Legislature.[4] (*People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156-1157 ["the Legislature's changes constituted an act of lenity that does not implicate defendants' Sixth Amendment rights"].)

To the extent defendant argues that he could have offered new or additional evidence under section 1170.95, subdivision (d)(3) thus making his presence essential, we disagree. That subdivision (d) of the statute permits a defendant to offer additional evidence at an evidentiary hearing *after* a trial court issues an order to show cause under subdivision (c) does not mean that a defendant is entitled to be present when the trial court makes the preliminary legal assessment that a defendant has failed to meet the requisite prima facie burden under subdivision (c).

We also note that the Supreme Court in *Lewis* assumed, for purposes of determining whether the improper denial of counsel under section 1170.95, subdivision (c) constituted reversible state law error, that petitioners may not present new evidence at the prima facie stage, although it expressed no view on the merits of this assumption. (*People v. Lewis*, *supra*, 11 Cal.5th at p. 974, fn. 7.) Given section 1170.95's express language, we think the Supreme Court's assumption is a sound one. Subdivision (d)(3) shows that the Legislature clearly knows how to provide an opportunity for the parties to offer new or additional evidence.[5] It made no similar

---

**4** We need not decide whether a defendant has a right to be present after a trial court determines that a petitioner has made a prima facie showing of entitlement to relief and issues an order to show cause as that issue is not presented here.

**5** Section 1170.95, subdivision (d)(3) provides: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. *The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens*." (Italics added.)

11

provision in subdivision (c) regarding the prima facie determination, however.  (See, e.g., *In re Jennings* (2004) 34 Cal.4th 254, 273 [where the wording of a statute shows the Legislature if it wishes knows how to express its intent that knowledge be an element of an offense, the absence of such a requirement in a similar statute indicates it intended no such requirement].)

DISPOSITION

The trial court's order denying defendant's petition for resentencing under section 1170.95 is affirmed.


/s/_____
Robie, J.


We concur:


/s/_____
Blease, Acting P. J.


/s/_____
Renner, J.